[No. B009951. Second Dist., Div. Five. Oct. 22, 1985.]

SOUTHERN INSURANCE COMPANY., Plaintiff and Respondent, v.
DOMINO OF CALIFORNIA, INC., et al., Defendants and Appellants.

**COUNSEL**

Manuel Seligman for Defendants and Appellants.

Cummins & White, Robert E. Perkins and James V. Shepherd for Plaintiff and Respondent.

**OPINION**

**EAGLESON, J.**—Plaintiff, Southern Insurance Company (Southern), issued a manuscript "all risk" insurance policy to Domino et al.[1] for a three-year period with coverage commencing on September 3, 1977, and continuing until September 3, 1980. The policy listed a number of exclusions of coverage. The relevant exclusions read:

"6. PERILS EXCLUDED: THIS POLICY DOES NOT INSURE AGAINST ANY LOSS CAUSED BY OR RESULTING FROM:

". . . . . . . . . . . . . . . . . . . . . . . .

"(E) MERE DISAPPEARANCE OF PROPERTY OR LOSS OR SHORTAGE OF PROPERTY DISCLOSED ON TAKING INVENTORY:

". . . . . . . . . . . . . . . . . . . . . .

---

[1]Domino of California, Inc., Timely Trends, Inc., a California corporation, and Paramount Trends, Inc., a California corporation (hereinafter sometimes called Domino et al.), were the named insureds. All were sued as defendants below and all have appealed.

"(I) ANY FRAUDULENT, DISHONEST OR CRIMINAL ACT DONE BY OR AT THE INSTIGATION OF ANY INSURED, PARTNER OR JOINT ADVENTURER IN OR OF ANY INSURED, AN OFFICER, DIRECTOR OR TRUSTEE OF ANY INSURED; PILFERAGE, APPROPRIATION OR CONCEALMENT OF ANY PROPERTY COVERED DUE TO ANY FRAUDULENT, DISHONEST OR CRIMINAL ACT OF ANY EMPLOYEE WHILE WORKING OR OTHERWISE, OR AGENT OF ANY INSURED, OR ANY PERSON TO WHOM THE PROPERTY COVERED MAY BE ENTRUSTED, OTHER THAN ANY CARRIER OR OTHER BAILEE FOR HIRE."

Domino received a shipment of 4,800 units of a particular style sweater at its warehouse on July 3, 1978. This shipment consisted of 200 cartons and had a value of $86,400. Approximately two weeks after the delivery, Domino's clerk discovered that the record documentation for this particular shipment was incomplete. She then reported the discrepancy in the records to her superiors, and a search for the missing documentation and sweaters subsequently occurred. Despite the search, the missing sweaters were never found. Domino submitted a sworn and subscribed proof of loss on October 23, 1978, asserting a loss due to theft and a claim of $81,400 (after application of a $5,000 deductible).

The claim was paid under a reservation of rights provided for in the policy. Southern then sued for declaratory relief. After a nonjury trial the court held for Southern and in its statement of decision determined: "The preponderance of the evidence at trial disclosed that the loss suffered by the defendant fits within this exclusion, in that it was a mere disappearance of property. The exclusion is not ambiguous and says plainly that any loss will be excluded if it stems from (1) mere disappearance of property; or (2) a loss or shortage of property disclosed on taking inventory. Consequently, a mere disappearance is excluded whether or not it is disclosed on the taking of inventory. This mere disappearance was thus excluded although the evidence did not disclose that the loss was discovered on inventory." All defendants appeal. We affirm.

DISCUSSION

I

■■ Domino first contends that paragraph 6(E) is ambiguous and should be interpreted against Southern.

■■ "It is elementary in insurance law that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. [Citations.] If semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the

losses to which the insurance relates. [Citation.] If the insurer uses language which is uncertain any reasonable doubt will be resolved against it; if the doubt relates to extent or fact of coverage, whether as to peril insured against [citations], the amount of liability [citations] or the person or persons protected [citations], the language will be understood in its most inclusive sense, for the benefit of the insured." (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 437-438 [296 P.2d 801, 57 A.L.R.2d 914]; see also *Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 807-808 [180 Cal.Rptr. 628, 640 P.2d 764].)

■ On the other hand, the court in *Safeco Ins. Co.* v. *Gilstrap* (1983) 141 Cal.App.3d 524, 532-533 [190 Cal.Rptr. 425] explained these rules of construction by providing: "Although we construe all provisions, conditions, or exceptions that tend to limit liability strictly against the insurer [citation], strict construction does not mean strained construction. [Citations.] We may not, under the guise of strict construction, rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid. [Citation.]"

■ Although the trial court found that paragraph 6(E) was unambiguous, the determination is one of law and therefore requires an appellate court to independently decide the issue. ■ We conclude that the policy is not vague or ambiguous.

Pursuant to paragraph 6(E), a "mere disappearance of property" is excludable. A "loss or shortage of property disclosed on taking inventory" is also excludable. Even though joined together in paragraph 6(E), they describe different incidents of exclusion. A "mere disappearance of property" is a type of loss. The adjective "mere" in this context means "exclusive of or considered apart from anything else" or "pure." (Webster's New Internat. Dict. (3d ed. 1981) p. 1413.) The term "loss or shortage of property disclosed on taking inventory" is another specie of loss which emphasizes the point in time at which the loss is discovered. The two concepts not only are different but are joined by the disjunctive "or."

Domino would have us conclude that paragraph 6(E) means that "mere disappearance of property discovered on the taking of inventory" is excludable. If this contention is correct, there would be no need to insert the words "of property" after the words "mere disappearance" and again after the words "or loss or shortage." The fact that the words "of property" were inserted in both places strengthens the interpretation that two separate exclusions were being defined. Otherwise, these words would be redundant. The disjunctive "or" would also be rendered a nullity under Domino's interpretation.

## II

■ Domino further argues that the judgment of the trial court is not supported by substantial evidence. We disagree.

■ ". . . the power of the appellate court begins and ends with the determination as to whether there is *any* substantial evidence contradicted or uncontradicted which will support the finding of fact. Additionally, in reviewing the evidence, all conflicts must be resolved for the respondent and all legitimate and reasonable inferences indulged in to uphold the verdict where possible. Also, when two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." (*Herman Christensen & Sons, Inc.* v. *Paris Plastering Co.* (1976) 61 Cal.App.3d 237, 253 [132 Cal.Rptr. 86], italics added.)

■ "[I]n an action upon an all-risks policy . . . the insured does not have to prove that the peril proximately causing his loss was covered by the policy. This is because the policy covers *all risks* save for those risks specifically excluded by the policy. The insurer, though, since it is denying liability upon the policy, must prove the policy's noncoverage of the insured's loss—that is, that the insured's loss was proximately caused by a peril specifically excluded from the coverage of the policy. [Citations.]" (*Strubble* v. *United Services Auto. Assn.* (1973) 35 Cal.App.3d 498, 504 [110 Cal.Rptr. 828], italics in original.)

Southern introduced evidence from Domino's vice president of distribution, Mr. Ballow. He testified as follows:

1. Of all the shipments Domino received on July 3, 1978, it only had problems with the papers for this one;

2. The person who signed for the shipments received by Domino that day was careful in counting each shipment;

3. Domino employees searched and found no trace of the merchandise in question;

4. Domino employees found no extra merchandise at the next quarterly inventory;

5. Domino's security system did not report any break-ins during the period in question;

6. After discovering the goods were missing, the witness himself made a physical search for the merchandise to see whether he could find any evidence of a break-in, and no evidence of a forced entry was found;

7. Domino employees determined that the alarm system was working and operating properly during the time in question;

8. The witness believed that it would be a "monumental task" to remove four tons of merchandise by hand;

9. The two investigating companies Domino hired to investigate this particular loss offered no explanation for the loss; and

10. The witness did not understand how such a loss could happen.

Ms. Robinson, the Domino clerk who discovered the paperwork discrepancy, proffered testimony that neither the yellow freight slip nor the actual merchandise could be located. She further testified that she could not explain what happened to the 200 cartons of women's sweaters and that their disappearance was a "total mystery" to her.

Mr. Gordon, Domino's president at the time of the loss, indicated that he had no explanation of what happened to the goods in question and that he did not think that anyone at Domino of California, Inc., Domino International or Domino Trading could explain how this particular loss occurred.

Finally, Mr. Ondatje, a Domino employee at the time the goods disappeared, testified he had no idea where the goods went or how they disappeared despite his search of the warehouse. He ultimately decided that the disappearance of the shipment was a complete mystery.[2]

Southern also offered testimony which raised the circumstantial possibility that the sweaters may not have actually been delivered, or if they were, they were the subject of an employee theft and therefore excludable under paragraph 6(I) of the policy. ██ The trial court, however, rejected these circumstantial possibilities and found that the preponderance of the evidence supported the "mere disappearance" of property. The trial court did not err.

### III

██ Domino's final contention is that there was no evidence introduced to show that Timely Trends, Inc. or Paramount Trends, Inc., separate cor-

---

[2]The testimony of the witnesses was a combination of live, deposition and examination under oath testimony.

porations named as insureds on the policy and as defendants in this litigation, were in any way involved in the claimed loss or that these companies received any of the insurance proceeds from defendant Domino. Therefore, there is an absence of substantial evidence to support a judgment against Paramount Trends, Inc. and Timely Trends, Inc.

This contention is without merit. The answer to the complaint was filed by a single attorney representing all three corporate entities. He further stipulated that all three defendants were insured and that they made a claim under the policy. The check for $81,400 was made out to Domino et al., not solely to Domino of California, Inc.

■ Domino continues that the court was further informed that Paramount Trends, Inc. no longer exists as a corporation, as it was dissolved prior to trial. This argument likewise is without merit. There was no evidence offered on the issue of dissolution. Moreover, if the dissolution was voluntary, Paramount Trends, Inc. still "continues to exist for the purpose of . . . prosecuting and defending actions by or against it . . . ." (Corp. Code, § 2010, subd. (a).) Indeed, Paramount Trends, Inc. not only responded to the original complaint but pursued a cross-complaint against Southern.

### DISPOSITION

The judgment is affirmed.

Ashby, Acting P. J., and Hastings, J., concurred.

Appellants' petition for review by the Supreme Court was denied January 16, 1986.