Durwood **VAUGHAN** and **Shellie Vaughan, Individually and as Next Friends of Durwood Dean Vaughan, Appellants,**

v.

**STATE FARM LLOYDS, Appellee.**

No. 14–96–00818–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 7, 1997.

Rehearing Overruled Aug. 28, 1997.

---

David Slaughter, Houston, for appellants.

Jack McKinley, Houston, for appellee.

Before LEE, AMIDEI and EDELMAN, JJ.

## OPINION

LEE, Justice.

The issue in this case is whether a standard homeowners insurance policy unambiguously excludes coverage for claims arising from the operation of a day care service operated out of the insured's home. We find it does not and reverse the judgment of the trial court.

## BACKGROUND

In 1993, Cynthia Solis operated a licensed child care facility at her home in League City, Texas. At the time, Solis was covered by a standard homeowners insurance policy ("Solis' policy") issued by State Farm Lloyds ("State Farm"). Solis' policy contained a "business pursuits" exclusion which barred coverage for bodily injury or property damage "arising out of or in connection with a business engaged in by an insured [Solis]." (emphasis removed). However, an exception to the exclusion provided that Solis *would* be insured for "activities which are ordinarily incidental to non-business pursuits." [1]

On February 24, 1993, while caring for Durwood Dean Vaughan and three other children, Solis strapped Vaughan into a car safety seat, placed him in a bathroom closet, and threw a blanket over his head. Solis then left the house, leaving Vaughan and the other children unattended. Galveston County Constable Officers were monitoring Solis' activities and stopped her for questioning. Officer Daniel Cooper entered her home and discovered the abandoned children. Solis was arrested and later confessed to leaving the children unattended on many prior occasions. She was charged with and subsequently convicted for four counts of endan-

---

1. Solis' policy provides, in part:

   SECTION II–LIABILITY COVERAGE
   COVERAGE C (Personal Liability)
   If a claim is made or a suit is brought against an *insured* for damages because of *bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies, we will:
   1. pay up to our limit of liability for the damages for which the *insured* is legally liable.
   2. provide a defense at our expense by counsel of our choice even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate.

   \* \* \*

   SECTION II–EXCLUSIONS
   1. Coverage C (Personal Liability) and Coverage D (Medical Payments to Others) do not apply to:
   b. *bodily injury* or *property damage* arising out of or in connection with a *business* engaged in by an *insured*. But this exclusion does not apply to activities which are ordinarily incidental to non-business pursuits.

gering a child. TEX. PENAL CODE ANN. § 22.041 (Vernon 1994).

The Vaughans filed suit against Solis seeking damages for mental and emotional distress. State Farm refused to defend or indemnify Solis against the Vaughan's allegations on the ground that the claims arose from a "business pursuit" which was excluded from coverage. The case proceeded to a bench trial on stipulated evidence, and after hearing the evidence, the trial court awarded the Vaughans $50,000 in damages.[2] The Vaughans then filed suit against State Farm claiming that State Farm was contractually obligated to pay the judgment rendered against Solis.[3]

State Farm moved for summary judgment alleging that the "business pursuits" exclusion barred coverage for the Vaughan's claims because they arose from Solis' home child care service. The Vaughans argued that because the "business pursuits" exclusion and its corresponding exception are subject to more than one reasonable interpretation, Solis' policy's language is ambiguous and summary judgment was improper. The Vaughans further argued that because child care is an activity "ordinarily incidental to a non-business pursuit," their claims fell within the exception to the "business pursuits" exclusion. The trial court granted summary judgment in State Farm's favor, basing its decision "upon the bar to coverage presented by the business [pursuits] exclusion of the homeowner's policy." This appeal followed.

## STANDARD OF REVIEW

The standard we follow in reviewing a summary judgment is well rehearsed. The movant for summary judgment has the burden to show there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). In deciding whether there exists a disputed material fact issue precluding summary judgment, we treat evidence favorable to the non-movant as true and indulge every reasonable inference in his favor. *Science*

*Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997) (citing *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 549 (Tex. 1985)).

## ANALYSIS

Although phrased differently, the Vaughan's three points of error essentially contend that because the policy's "business pursuits" exclusionary language is ambiguous, the trial court erred by granting summary judgment in favor of State Farm.

■ In Texas, the general rules of contract construction govern insurance policy interpretation. *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 823 (Tex.1997). Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was formed. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex.1996). A contract is unambiguous as a matter of law if it can be given a definite or certain legal meaning. *Id.* at 589. Conversely, if an insurance contract is subject to more than one reasonable interpretation, the contract is ambiguous, and the interpretation that most favors coverage for the insured will be adopted. *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991). In this case, we must decide whether there exists more than one reasonable interpretation of Solis' policy's "business pursuits" exclusion and exception. Before making this determination, we note that an intent to exclude coverage must be expressed in clear and unambiguous language. *Id.*

To support their argument that the policy's language is ambiguous, the Vaughans cite *State Farm Fire & Cas. Co. v. Reed,* 873 S.W.2d 698 (Tex.1993). In *Reed,* an eighteen month old child crawled through a fence that separated a play area from the Reeds' swimming pool and drowned in a puddle of water on a tarp covering the pool. *Id.* The infant's parents filed a wrongful death action against

---

2. The trial court awarded the Vaughans $10,000 in actual damages and $40,000 in punitive damages.

3. Although it is not contained within the record, it appears that Solis assigned her right to indemnification to the Vaughans, who then brought suit against State Farm.

the Reeds, the child's day care providers. After proper notification, the Reeds asked their insurance carrier, State Farm, to defend them under their homeowners insurance policy. Under a reservation of rights, State Farm defended the Reeds. After a bench trial, the court rendered judgment against the Reeds for $480,000 plus interest. *Id.* at 699. When State Farm refused to indemnify the Reeds, they filed an action seeking a declaratory judgment against State Farm for the judgment. *Id.* The trial court granted summary judgment for the Reeds, and this court affirmed. *See State Farm Fire & Cas. Co. v. Reed,* 826 S.W.2d 659 (Tex.App.— Houston [14th Dist.]), *aff'd,* 873 S.W.2d 698 (Tex.1993). State Farm appealed to the Texas Supreme Court.

The supreme court held that "[w]hether child care in the home for which some remuneration is received is excluded as a 'business pursuit', or is an exception to this exclusion because it is 'incident to non-business pursuits,' is unclear." *Id.* at 699–700. The court then noted that various jurisdictions have taken three separate approaches to the issue, and each approach has yielded a different interpretation of the "business pursuits" exclusion and exception. *Id.* at 700. Finding coverage existed under the policy, the court stated:

> The cases from other jurisdictions support the conclusion that this exclusion and exception are susceptible to more than one reasonable interpretation. Under one interpretation, the Reeds' liability arising out of home child care is always incident to a non-business pursuit. Under another reading, the Reeds' [negligent conduct] constitutes a failure to safely supervise children enrolled in a child care program. Thus, this activity is not incidental to a non-business pursuit. Yet under another construction of the exclusion and the exception, the maintenance of the fence at a person's home is ordinarily incident to a non-business pursuit. We must resolve the uncertainty of a policy exclusion by adopting the construction most favorable

to the insured. Based upon an examination of the text of this exclusion and exception and considering other possible reasonable interpretations, we conclude that the provision is ambiguous.

*Id.* at 701 (citations and footnotes omitted).

State Farm concedes that *Reed* contradicts its position that Solis' policy's exclusionary language unambiguously excludes coverage. State Farm argues, however, that *Reed* should be narrowly construed and its holding limited to the specific set of facts considered by the court. State Farm also argues that *Reed,* if read in context, does not apply to the present case. We disagree.

In *Reed,* the court confronted the identical issue presented in the case at bar, *i.e.,* whether a homeowners insurance policy that excludes coverage for the "business pursuits" of the insured except those activities which are "ordinarily incidental to non-business pursuits" covers the activities of a paid, home child care provider. *See id.* at 698. To answer this question, the court was required, as are we, to determine whether home-based child care for remuneration is excluded from coverage as a "business pursuit," or is an exception to this exclusion as an activity "ordinarily incidental to non-business pursuits." *See id.* at 700. After considering the various approaches construing the exclusion and exception *in the context of home child care,* the *Reed* court determined the policy language was ambiguous and construed it in favor of the insured. *Id.* at 701.

We agree with State Farm that the holding in *Reed* is limited to the application of the "business pursuits" exclusion and exception in a particular context, home child care for remuneration; however, such is the context presented here. Contrary to State Farm's assertion, no matter how thinly one slices *Reed,* it invariably stands for the proposition that, in the context of home child care, the "business pursuits" exclusion and exception are ambiguous and *must* be construed in favor of the insured.[4]

4. State Farm complains that if *Reed* establishes a *per se* rule that the "business pursuits" exclusion and exception are ambiguous in the context of home child care for remuneration, then *all* such child care providers would be covered under their homeowners policy for claims arising therefrom. Ironically, this seems to be the very result the court was trying to avoid when it declined to

State Farm next argues that *Reed* should not apply to this case because the "business pursuits" exclusion in Solis' policy is phrased differently than the exclusion discussed in *Reed*.[5] Specifically, State Farm argues:

> The ambiguity discussion in *Reed* is largely explained by the sweeping language of the old exclusion, which applied "to any business pursuits of an insured except activities therein which are ordinarily incidental to non-business pursuits." In striking contrast, the business exclusion in the current version of the Texas homeowners policy, as issued to [Solis], applies not to all business activity, but to *damages* with a particular (causal) relationship to the insured's business activity. [T]he rephrasing of the exclusion means that ordinarily non-business "activities" are not within the exception unless the injury in issue is one "arising our of or in connection with" such non-business pursuits.

(citations omitted).

The central issue in *Reed* was whether home child care for remuneration is excluded as a "business pursuit" or is an exception to the exclusion because it is an activity "ordinarily incidental to non-business pursuits." *See id.* at 700. After determining that the activity *could* be reasonably characterized as both, the court found the language was ambiguous and held that coverage existed under the policy. *Id.* at 701.

■ The same issue is presented in the instant case *even in light of the changed policy language.* The policy in *Reed* excluded coverage for "any business pursuits of an Insured except activities ... ordinarily incidental to non-business pursuits." Similarly, Solis' policy excludes coverage for bodily injury "arising out of or in connection with a *business* engaged in by the insured [except those] activities which are ordinarily incidental to non-business pursuits." (emphasis supplied). The dispositive issue here, as in *Reed*, is whether the claims arising from an insured's [Solis'] home-based child care service are excluded from coverage. After comparing the language of the Reed and Solis policies, we find no significant distinction sufficient to warrant a departure from the reasoning in *Reed*.

## CONCLUSION

Based on *Reed*, and the authorities cited therein, we find the "business pursuits" exclusion and exception in Solis' policy are subject to more than one reasonable interpretation and therefore ambiguous. Accordingly, we find the summary judgment improperly granted, reverse the trial court's judgment, and remand the case for further proceedings.[6]

adopt the approach taken in *Crane v. State Farm Fire & Cas. Co.*, 5 Cal.3d 112, 95 Cal.Rptr. 513, 485 P.2d 1129 (1971). *See Reed*, 873 S.W.2d at 700 (recognizing the approach adopted in *Crane* "has been criticized as too broad because the 'ordinarily incident to non-business pursuits' exception swallows the 'business pursuits' exclusion, at least in the context of day care.").

5. In its brief, State Farm argues this court should adopt the approach applied in *Gulf Ins. Co. v. Tilley*, 280 F.Supp. 60 (N.D.Ind.1967), *aff'd per curiam*, 393 F.2d 119 (7th Cir.1968). To support its argument, State Farm asserts "[t]his approach is the only one that does not nullify policy terms, and to apply it well[,] courts need only avoid contrivance while making fact-sensitive decisions. No other listed approach offers promise." However, the *Reed* court criticized this approach and disagreed with its application to cases involving home-based, for profit, child care

businesses. *See Reed*, 873 S.W.2d at 701 n. 7. Even Justice Phillips' dissent disapproved of the *Tilley* approach. *Id.* at 703 ("I thus reject the view that in determining whether the 'incident to non-business' exception applies, we should focus on some more specific act ... that might be said to have caused the injury.").

6. In its brief, State Farm criticizes Justice Hightower's method of discussing different jurisdictions' interpretations of the "business pursuits" provision and then finding it to be ambiguous based on those different interpretations. State Farm complains that "[i]f judicial disagreement established policy language as ambiguous, the law of the nation would be set at the lowest common denominator in favor of insureds. Even two or three decisions nationwide for insureds on a coverage issue would render moot any need for analysis by any other court that

---

believed difference of opinion ended its need for independent inquiry and analysis on a disputed issue of policy interpretation." State Farm's complaint is well taken. However, as an inter-

mediate appellate court, we can no more change the court's analysis in *Reed* than change its effect on the case at bar.