**BETCO SCAFFOLDS COMPANY, INC., Appellant,**

**v.**

**HOUSTON UNITED CASUALTY INSURANCE COMPANY, Appellee.**

No. 14–98–00179–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 12, 2000.

Levon G. Hovnatanian, Robert L. Ramey, Houston, for appellants.

David Taylor, Michele Medlock Cassidy, Dallas, for appellees.

En Banc panel consists of Chief Justice MURPHY, and Justices YATES, MAURICE E. AMIDEI, ANDERSON, HUDSON, FOWLER, EDELMAN, WITTIG, FROST, and DRAUGHN.*

## MAJORITY OPINION ON MOTION FOR REHEARING EN BANC

EDELMAN, Justice.

Appellant's motion for rehearing en banc is overruled, the opinion issued in this case on August 12, 1999, is withdrawn, and the following majority and dissenting opinions are issued in its place.

In this insurance coverage case, Betco Scaffolds Company, Inc. ("Betco") appeals a summary judgment entered in favor of Houston United Casualty Insurance Company ("Houston United") on the grounds that: (1) coverage of Betco's claim is not barred by: (a) the "inventory exclusion" provision of the policy; or (b) Betco's failure to fully comply with the policy's sworn proof of loss provision; (2) Houston United acted in bad faith with regard to the spoliation of Betco's claim files and by not investigating Betco's claim; (3) a private cause of action exists for violation of Board Order 27085; and (4) Houston United did not have a reasonable basis to deny Bet-

---

* Senior Justice Joe L. Draughn sitting by as-   signment.

co's claim. Because we conclude that coverage of Betco's claim is barred by the inventory exclusion provision of the policy, we affirm.

### Background

Houston United issued Betco an insurance policy (the "policy") insuring against theft, among other things. On June 13 and July 3 of 1995, Betco allegedly suffered two burglaries on its property (the "June and July losses"). Betco promptly reported these losses to the local police but did not report them to Houston United until after a further shortage was discovered in Betco's annual September 30 physical inventory (the "September shortage"). Houston United denied Betco's claim for coverage of the September shortage on the grounds that: (a) Betco did not file a sworn proof of loss within ninety-one days of the dates of the June and July losses as provided in the "proof of loss" provision of the policy; and (b) the September shortage fell within the "inventory exclusion" provision of the policy because Betco discovered it upon taking inventory.

Betco thereafter sued Houston United for breach of contract, breach of the duty of good faith and fair dealing, deceptive trade practices, and violations of the Texas Insurance Code. Houston United moved for summary judgment against the contractual claims on the grounds that coverage was precluded by the proof of loss and inventory exclusion provisions of the policy. Houston United moved for summary judgment against the extra-contractual claims on the grounds that: (1) it had a reasonable basis to deny Betco's claim; (2) the extra-contractual claims were barred by the lack of a contractual claim; (3) the dispute over the claim was bona fide as a matter of law; (4) there is no private right of action for violation of Board Order 27085; and (5) Houston United did not violate the Texas Deceptive Trade Practices Act ("DTPA") or Texas Insurance Code. The trial court entered two orders granting take nothing summary judgments

against Betco's contractual and extra-contractual liability claims, respectively, without stating the grounds upon which either order was granted.

### Standard of Review

A summary judgment may be granted if the evidence referenced in the motion or response shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or response. *See* Tex.R.Civ.P. 166a(c). A defendant may obtain a summary judgment by disproving at least one element of each of the plaintiff's claims or by establishing all elements of an affirmative defense to each claim. *See American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997). In reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *See Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999). When the grounds for granting a summary judgment are not stated in the trial court's order, it may be affirmed on any grounds in the motion that have merit. *See Bradley v. State ex rel. White,* 990 S.W.2d 245, 247 (Tex.1999).

### Inventory Exclusion Provision

■ The first of Betco's four points of error argues that its contractual claims were not barred by the inventory exclusion provision of the policy (the "inventory exclusion provision") which states "This policy does not insure against ... [l]oss or shortage disclosed upon taking inventory." Betco contends that such a provision excludes only a "paper" loss, *i.e.,* a loss reflected solely on the insured's books, such as from a record-keeping error, but does not exclude an actual shortage of goods that is discovered upon taking a physical inventory. *See Betty v. Liverpool & London & Globe Ins. Co.,* 310 F.2d 308 (4th Cir.1962). Betco further asserts that a construction of the provision favoring the

insured must be adopted because the provision is susceptible to more than one reasonable interpretation.

Insurance contracts are interpreted according to the rules of contract construction. *See Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). In construing contracts, our primary concern is to ascertain the true intent of the parties as expressed in the instrument. *See id.* We give effect to all contract provisions so that none will be rendered meaningless. *See id.*

■■■ Where a policy exclusion is ambiguous, a court must adopt the construction urged by the insured as long as it is not unreasonable, even if the interpretation urged by the insurer appears to be a more reasonable or accurate reflection of the parties' intent.[1] *See Balandran v. Safeco Ins. Co.*, 972 S.W.2d 738, 741 (Tex. 1998). Importantly, however, an ambiguity does not arise merely because the parties advance conflicting interpretations, but only where the language of the policy is subject to two or more *reasonable* interpretations. *See Kelley–Coppedge*, 980 S.W.2d at 465. Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. *See id.* at 464.

■■■ Betco argues that its interpretation is necessarily a reasonable one because at least one court from another jurisdiction has adopted it. On the contrary, insurance policy provisions are not susceptible to more than one reasonable interpretation, and thus ambiguous, merely because other jurisdictions have reached differing conclusions about similar provisions. *See Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 459 (Tex.1997). Rather, although "[o]pinions from other states about insurance policy interpretation can be persuasive, . . . ambiguity is for this Court to decide." *Id.*[2] Therefore, with due consideration of the reasoning of decisions from other jurisdictions, we must reach our own determination as to whether Betco's interpretation is reasonable.

The parties have cited and we have found no Texas court opinion interpreting the effect of a similar provision. Even decisions from other jurisdictions have rarely specifically construed "disclosed on taking inventory" language.[3] Of those

---

1. The second paragraph of the dissent cites as two well established rules that: (1) contracts of insurance are construed against the insurer and liberally in favor of finding coverage for the insured; and (2) when an insurance policy is ambiguous, the court construing the policy must adopt the interpretation most favorable to the insured. However, as reflected in the authority cited by the dissent for the first rule, it arises only in the context of the second rule and is, thus, part of it. *See Pioneer Chlor Alkali Co. v. Royal Indem. Co.*, 879 S.W.2d 920, 929 (Tex.App.—Houston [14th Dist.] 1994, no writ). Therefore, as noted in the text above, an insurance policy is construed in favor of the insured only after an ambiguity is found based on a reasonable interpretation favoring the insured and not for the purpose of finding an ambiguity in the first place.

2. If the interpretation of a policy provision by another jurisdiction automatically rendered that interpretation reasonable, then under *Balandran*, Texas courts would always be bound

by the decision of whatever other jurisdiction has interpreted a given provision most favorably for the insured. On the contrary, while Texas courts may certainly draw upon the precedents of any other federal or state court, they are obligated to follow only higher Texas courts and the United States Supreme Court. *See Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex.1993).

3. Many cases from other jurisdictions have dealt with exclusions pertaining to unexplained or mysterious losses of property disclosed on taking inventory, but have been decided based on the "unexplained or mysterious" language or other considerations rather than the "disclosed on taking inventory" language. *See, e.g., McCormick & Co. v. Empire Ins. Group*, 690 F.Supp. 1212, 1213 (S.D.N.Y.1988) (holding that exclusion in warehouseman's policy for unexplained loss, mysterious disappearance, or loss disclosed upon taking inventory did not apply to loss by warehouse of materials stored there on bail-

which have, at least two have merely enforced the exclusion according to its plain meaning without much analysis.[4] A third case, and that upon which Betco primarily relies, reached the opposite result because the court felt that such an exclusion was unfair and unreasonable:

> In order to affirm the judgment below it is necessary to construe the exceptive clause of the policy to mean that no loss is covered if it is first discovered upon taking inventory, no matter what proof may be subsequently brought to light showing the loss to be clearly within the risks for which the policy was written. We feel that such a construction would be unrealistic. It does not seem reasonable to us that business men would enter into an agreement to insure against a loss discovered in one way and not insure against the same loss if it should be discovered in another way. We are, therefore, unable to accept this interpretation of the words under the circumstances of this case.

> On the other hand, it would be both reasonable and fair for an insurer to except itself from a loss or shortage reflected solely on the insured's books and not substantiated by any independent external proof—a mere theoretical inventory loss. Such an interpretation is compatible with the other provisions of the exceptive clause which excludes "unexplained loss or mysterious disappearance." [5]

*See Betty*, 310 F.2d at 310. By contrast, Texas "courts cannot make new contracts between the parties, but must enforce the contracts as written." *Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex. 1965).

■ In this case, relevant provisions of the policy provide:

3. This policy insures against all risks of direct physical loss of or damage to the insured property from any external cause, except as hereinafter excluded.

4. This policy does not insure against:
   * * *

   (b) Loss or shortage disclosed upon taking inventory; ...

Paragraph 3 establishes the overall scope of the policy to insure only against actual physical losses from external causes. In theory, a loss or shortage disclosed upon taking inventory can be the result of a variety of causes, such as: (1) errors not discovered in previous inventories; (2) errors or fraud in recording incoming and/or outgoing inventory; (3) errors or fraud in counting the current inventory; (4) theft by employees; or (5) theft by outsiders. Obviously, not all of these possibilities involve an actual physical loss, one resulting from an external cause, or both.

In this case, the summary judgment evidence included the police reports filed by Betco after each of the burglaries. The

---

ment); *Van Dutch Prods. Corp. v. Zurich Ins. Co.*, 67 A.D.2d 844, 413 N.Y.S.2d 8, 9 (N.Y.App.Div.1979) (finding a loss not to be unexplained or mysterious where there was evidence of theft); *Balogh v. Jewelers Mut. Ins. Co.*, 167 F.Supp. 763, 769–70 (S.D.Fla. 1958) (holding that mysterious disappearance exclusion did not apply because insurer did not establish that cause of loss was a mysterious disappearance); *see also Dunlop Tire & Rubber Corp. v. Fidelity & Deposit Co.*, 479 F.2d 1243, 1248 (2d Cir.1973) (holding that provision excluding loss, the proof of which, either as to its existence or amount, was dependent upon an inventory computation, was applicable where claimant could not show with evidence other than the inventory com-

putation that a loss was sustained due to employee dishonesty).

4. *See Jones v. Employers Mut. Cas. Co.*, 230 Neb. 549, 432 N.W.2d 535, 540 (1988) (holding loss to be excluded because it was discovered as a discrepancy between the inventory records and physical inventory); *Blue Stripe, Inc. v. United States Fidelity & Guar. Co.*, 87 N.C.App. 167, 360 S.E.2d 140, 141 (1987) (holding loss to be excluded because it was discovered upon taking regular monthly inventory of stock).

5. *See infra* note 2. The parties have cited, and we have found, no mysterious or unexplained loss exclusion language in the policy.

first report, dated June 13, 1995, lists the value of the property stolen and damaged in the first burglary as $9,604 and $200, respectively. The second report, dated July 3, 1995, lists the value of property stolen and damaged in the second burglary as $1,000 and $50, respectively. According to a statement given by Bill Golding, the Loss Prevention Manager of Betco, to Rose Adjusting Company ("Rose"), the adjusting firm investigating Betco's claim for Houston United, Betco did not initially report its losses from the burglaries to Houston United because it considered the items taken and the loss suffered "less significant than would have resulted in [an] insurance claim."[6] When asked whether he knew of any items that had been stolen on June 13 other than what was listed on the police report, Golding stated that, to the best of his knowledge, he did not "have the capability" to identify anything else.

Golding's statement to Rose further acknowledged that the September shortage was not disclosed to Houston United until after Betco took its annual September 30 physical inventory. This fact is also reflected on each of Betco's property loss notice forms. In answer to Houston United's first request for admissions, Betco also admitted that the September 30 inventory was not taken to discover items allegedly stolen on June 13 or July 3, 1995, but was an annual inventory which would have been taken regardless of whether the burglaries had taken place. As compared to the roughly $11,000 combined loss that Betco reported to the police from the burglaries, the loss Betco allegedly claimed after taking its annual inventory was over $158,000.

Although Betco seeks to attribute the September shortage to the two burglaries, it presented no evidence to support any

such inference. On the contrary, Betco's loss prevention manager admitted that he did not have even the capability to determine whether any of the items discovered missing in the September inventory could have been taken in the burglaries. In theory, some or all of the September shortage could have instead resulted from a variety of other causes, as outlined above, which: (a) could have occurred before and/or after the burglaries; (b) might or might not have involved an actual physical loss from an identifiable external cause; and (c) would be difficult or impossible to ever identify with reasonable certainty.

As illustrated by the circumstances of this case, and contrary to the rationale of *Betty*, we believe that the inventory exclusion provision reflects a recognition of the inherent uncertainty as to the causes of shortages which are only disclosed upon taking a periodic physical inventory. We further believe that the inventory exclusion provision (like a proof of loss provision) reflects a recognition that an insurer should be afforded a fair opportunity to: (i) investigate the circumstances of a claim before circumstances change and memories fade,[7] and (ii) where, as here, a theft is alleged, attempt recovery of the stolen items.[8] The fact that an insurer can be held liable for failing to reasonably investigate a claim,[9] as Betco has alleged, further underscores the need to allow an insurer's investigation to be made while the greatest likelihood exists to collect meaningful information. The passage of time and occurrence of intervening events can only operate to obscure relevant facts and defeat these objectives.

Based on what we perceive to be the overall intent of the policy and the plain meaning and rationale of the invento-

---

6. The total of these two amounts did not exceed the $25,000 deductible for theft under the policy.

7. *See, e.g., Employers Cas. Co. v. Glens Falls Ins. Co.,* 484 S.W.2d 570, 575 (Tex.1972).

8. *See, e.g., St. Paul Mercury Ins. Co. v. Tri–State Cattle Feeders, Inc.,* 638 S.W.2d 868, 869 (Tex.1982).

9. *See, e.g., State Farm Fire & Cas. Co. v. Simmons,* 963 S.W.2d 42, 47 (Tex.1998).

ry exclusion clause, we conclude that this provision expressly allocates to the insured the risk of a loss or shortage which comes to the attention of the insured solely by reason of taking a regularly scheduled, *i.e.,* periodic, physical inventory. We recognize that a regularly scheduled inventory could coincide with the investigation of a casualty in such a way that the inventory is *intended* by the insured as a means to quantify the loss. In that event, the inventory exclusion provision would not exclude the loss because the loss would not have been disclosed upon taking inventory.

The summary judgment evidence in this case established that Betco had completed its investigation of the two burglaries, unequivocally reported the amount stolen to police, and decided without qualification that the magnitude of the losses did not exceed the deductible and thus warrant filing an insurance claim. There is no evidence that Betco was continuing to investigate the loss, held any doubt as to the accuracy of its initial estimates of the losses, or was expecting to use the September 30 inventory in any way to measure the losses from the burglaries. It was only when a considerable inventory shortage was disclosed by its annual physical inventory that Betco sought to attribute any greater loss to the burglaries. This is precisely the type of situation which we believe the inventory exclusion provision was intended to avoid. The summary judgment evidence thus established that Betco's September shortage was disclosed upon taking inventory.

Betco argues that merely because the burglaries had been discovered prior to

taking the September 30 inventory, that inventory did not disclose the fact of the losses but only quantified their amount. This, of course, *assumes* that the September shortage was attributable to the burglaries,[10] the inherent uncertainty of which is clearly established by the evidence in this case and lies at the heart of having the exclusion in the first place.

Similarly, under Betco's interpretation, the exclusion would apply only where the claimed loss is a paper, rather than physical, loss. However, such an approach would render the exclusion meaningless in that a paper loss would not be within the overall scope of the policy, covering only actual physical losses, such that an exclusion would ever be necessary or applicable to exclude it. In effect, Betco would have the exclusion apply only where there is no loss in the first place. Because that interpretation is fundamentally at odds with both the plain meaning and rationale of the inventory exclusion provision, it is *not only not a reasonable interpretation* of it, but is instead an obliteration of it which produces precisely the opposite of the intended effect. Regardless whether we agree with the rationale of such a provision or like the result it produces in a particular case, we are bound to enforce it as it is written, not to nullify it. *See Royal Indem. Co.,* 388 S.W.2d at 181 ("Courts cannot make new contracts between the parties, but must enforce the contracts as written.") Because Betco's interpretation of the inventory exclusion provision is not a reasonable interpretation, its first point of error fails to demonstrate that the trial court erred in

**10.** To support the argument that the September shortage was not disclosed, but only quantified, upon taking inventory, the dissent contends that, under the summary judgment standard of review, the September shortage must be presumed to have arisen from the burglaries. On the contrary, that standard requires us to take as true all *evidence* favorable to the nonmovant and indulge every *reasonable* inference in its favor. *See Rhone–Poulenc,,* 997 S.W.2d at 223. Where circumstances are consistent with either of two facts

and nothing shows that one is more probable than the other, neither fact can be inferred. *See, e.g., Transport Ins. Co. v. Faircloth,* 898 S.W.2d 269, 278 (Tex.1995). In this case, there is no evidence that the September shortage resulted from the thefts; nor is there anything else to indicate that the shortage was more likely the result of the burglaries than other causes. Accordingly, the cause of the September shortage can neither be presumed nor inferred.

granting summary judgment against Betco's contractual claims and is overruled.[11]

## Extra–Contractual Claims

Betco's fourth point of error argues that the summary judgment against its extra-contractual claims was improper because Houston United is liable for the bad faith acts of its agent in spoliating the papers in Betco's claims file and in failing to investigate Betco's claim. In addition, Betco alleges that fact issues remain as to whether there is a bona fide dispute and that Houston United did not have a reasonable basis to deny its claims, thereby substantiating Betco's DTPA and Insurance Code claims.

■■■■■ An insurer breaches its duty of good faith and fair dealing when the insurer has no reasonable basis for denying or delaying payment of a claim, and the insurer knew or should have known that fact. *See Universe Life Ins. Co. v. Giles,* 950 S.W.2d 48, 50–51 (Tex.1997). Conversely, there can be no claim for bad faith when an insurer has denied a claim that is, in fact, not covered and has not otherwise breached the contract. *See Liberty Nat'l Fire Ins. Co. v. Akin,* 927 S.W.2d 627, 629 (Tex.1996); *Republic Ins. Co. v. Stoker,* 903 S.W.2d 338, 341 (Tex.1995). However, this does not exclude the possibility that in denying the claim, the insurer committed an act that was so extreme as to cause injury independent of the policy claim. *See Republic Ins.,* 903 S.W.2d at 341. Nor does it change established principles regarding the duty of an insurer to timely investigate its insureds' claims. *See id.*

In this case, because Houston United had a reasonable basis for denying Betco's claim based on the inventory exclusion provision, it did not breach its contract or its duty of good faith and fair dealing to Betco with regard to that denial. In addition, Houston United's investigation revealed evidence sufficient to legitimately sustain a basis for denial of the claim, and

Betco has cited no authority or evidence imposing an obligation on Houston United to investigate beyond that. Therefore, Betco has not shown error in granting summary judgment with regard to its bad faith claim for failure to investigate.

■■■■ Lastly, although Betco alleged conduct by Houston United to show its bad faith, such as spoliation of papers in Betco's claim file, it alleged no act by Houston United that was so extreme as to cause Betco injury independent of its policy or bad faith claims. Under these circumstances, the negating of Betco's claims for breach of contract and bad faith denial and failure to investigate also defeated Betco's remaining extra-contractual Insurance Code and DTPA claims. *See Stewart Title Guar. Co. v. Aiello,* 941 S.W.2d 68, 72 (Tex.1997); *Republic Ins.,* 903 S.W.2d at 341. Accordingly, Betco's fourth point of error is overruled, and the judgment of the trial court is affirmed.

MURPHY, C.J., dissenting, joined by FOWLER, WITTIG and DRAUGHN, JJ.

. MAURICE E. AMIDEI, J., not participating.

PAUL C. MURPHY, Chief Justice, dissenting.

Because we believe that the inventory exclusion provision in Houston United's "all-risk" insurance policy does not exclude Betco's claim, we respectfully dissent.

In interpreting insurance contracts, two points are well-established. First, the contract is construed against the insurer and liberally in favor of finding coverage for the insured. *See Pioneer Chlor Alkali Co. v. Royal Indemnity Co.,* 879 S.W.2d 920, 929 (Tex.App.—Houston [14th Dist.] 1994, no writ) (citing *Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 666 (Tex.1987). This is especially true when construing exclusions or exceptions to coverage under the contract. *See National Union Fire Ins.*

---

**11.** Because the summary judgment on Betco's contractual claims can be affirmed on the basis of the inventory exclusion, we need not reach Betco's second and third points of error concerning alternative grounds for negating those contractual claims.

Co. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex.1991). Second, when an insurance policy is ambiguous, the court construing the policy must adopt the interpretation most favorable to the insured. See State Farm Fire & Cas. Co. v. Vaughan, 968 S.W.2d 931, 933 (Tex.1998). Whether an insurance contract is ambiguous is a legal question decided by examining the entire contract in light of the circumstances present when the parties entered the contract. See id. Moreover, in addressing the propriety of the grant of summary judgment, we do not show deference to the trial court's decision and must review its determinations de novo. See Elam v. Yale Clinic, 783 S.W.2d 638, 641 (Tex.App.—Houston [14th Dist.] 1989, no writ).

Both parties offer different interpretations of how the inventory exclusion applies. Betco argues that the inventory exclusion should be limited to losses of inventory that are shown only on the insured's books and are not substantiated by any independent proof. Houston United, however, argues that any loss disclosed upon taking inventory, regardless of the type of inventory or its rationale, is excluded from coverage. Here, there is undoubtedly an ambiguity in the insurance contract regarding the meaning of the term "inventory" in Houston United's insurance contract. Highlighting this ambiguity is the fact that both parties to this appeal, as well as the majority, discuss several different types of inventories, ranging from "paper" inventories to "actual, physical" inventories. Both parties and the majority opinion also compare regularly scheduled inventories to inventories taken to substantiate loss, the latter, under the majority's interpretation, apparently would not included under the exclusion clause of Houston United's insurance contract pro-

vided it was regularly scheduled and "coincided" with the investigation of the loss and was "intended" by the insured to quantify the loss.

Moreover, there are many situations which might arise where the meaning of the phrase "disclosed upon taking inventory" in the exclusionary clause would be ambiguous. For example, an insured who conducts an inventory to substantiate the losses incurred in a theft certainly would not expect that inventory to later be a grounds for the exclusion of coverage. Likewise, an insured who discovers a loss during an inventory, investigates the loss, and discovers the loss to be from a theft occurring just days before the inventory occurred would not expect the inventory exclusion clause to cut off his claim. However, under the majority's analysis, insurance companies would be free to use the clause with impunity to escape their duty to indemnify.[1] Situations such as these would create an ambiguity in the meaning of "disclosed upon taking inventory." Our task here is to decide if, under the circumstances of this case, this phrase becomes ambiguous. See Vaughan, 968 S.W.2d at 933; see also State Farm Fire & Cas. Co. v. Reed, 873 S.W.2d 698, 701 n. 7 (Tex. 1993).

Under the terms of the policy, Houston United must indemnify Betco for "all risks," including any theft that is not attributable to an employee, agent, or principal of Betco. Here, the summary judgment proof shows that a theft occurred at Betco's LaMarque site and Betco determined the loss to be minimal. The proof does not indicate that any Betco employees were involved in the theft. Three months later, when Betco employees went to the site to physically count its equipment and materials for an annual inventory, they

---

1. We note that the majority apparently carves out an exception to how far this clause reaches. It notes that annual inventories coinciding with the investigation of a loss or theft would not fall within the ambit of the inventory exclusion. Regardless, we find it instruc-

tive that Houston United, in its motion for rehearing, ignores this exception and argues that any loss discovered as a result of taking an inventory, no matter the purpose or type, would come within the terms of the exclusion.

discovered the losses were more substantial than they had first believed.

Under these circumstances, we believe that the phrase "disclosed upon taking inventory" becomes ambiguous since it conflicts with an area of coverage (i.e., theft by non-employees). Here, the *loss* was not discovered during the inventory. Rather, the proof shows the *size* of the loss was discovered during the inventory. The loss is also attributable to an external cause covered under the terms of the policy: the thefts three months earlier. Viewing the proof, as we must, in the light most favorable to Betco, we must presume that the loss was incurred during the thefts.

Even assuming the majority's view is correct and the clause in not ambiguous, a fact issue exists about whether the loss was "disclosed upon taking inventory" or, rather, was quantified by it. This fact issue, under any view, makes the grant of summary judgment inappropriate.

The majority makes much of the fact that many more explanations for the loss exist. While we agree, such alternative explanations have no place when analyzing facts in a motion for summary judgment. We must view the evidence in the light most favorable to the nonmovant and indulge every inference in its favor.

Based on the facts of this case, the phrase "disclosed upon taking inventory" becomes ambiguous because the loss was known before the inventory was taken. Rather, what was disclosed by the inventory was the size of the loss.

This ambiguity is underscored in decisions from other jurisdictions. In *Betty v. Liverpool and London and Globe Ins. Co.*, 310 F.2d 308 (4th Cir.1962), the court addressed a claim of ambiguity under a similar clause. There, the insured sought indemnity for the loss of 1,024 tires. *See id.* at 309. During its quarterly inventory, the insured discovered the loss. *See id.* Sometime later, a man pleaded guilty to stealing tires from the insured's property during the quarter that the loss occurred.

*See id.* The man stated that on the night of his theft, he saw a truck loaded with tires leaving the insured's property. *See id.* at 310. The insured was not made aware of the theft until after the loss was disclosed in the inventory. *See id.* at 309. Based on these facts, the insurer denied the insured's claim.

The court, in holding the term "inventory" ambiguous, held that:

> to affirm the judgment below [for the insurer] it is necessary to construe the exceptive clause of the policy to mean that no loss is covered if it is first discovered upon taking inventory, no matter what proof may be subsequently brought to light showing the loss to be clearly within the risks for which the policy was written. We feel that such a construction would be unrealistic. It does not seem reasonable to us that business men would enter into an agreement to insure against a loss discovered in one way and not insure against the same loss if it should be discovered in another way. *See id.* at 310.

Based on this reasoning, the court held that the clause should be read to exclude only losses shown on the books of an insured that are not substantiated by any independent proof. *See id.*

In other jurisdictions, courts have reached similar conclusions. *See McCormick & Co. v. Empire Ins. Group*, 690 F.Supp. 1212 (S.D.N.Y.1988), *aff'd*, 878 F.2d 27 (2d Cir.1989); *Van Dutch Prods. Corp. v. Zurich Ins. Co.*, 67 A.D.2d 844, 413 N.Y.S.2d 8 (N.Y.App.Div.1979); *Balogh v. Jewelers Mut. Ins. Co.*, 167 F.Supp. 763, 769 (D.Fla.1958). Likewise, Betco's interpretation of similar exclusionary language has been deemed reasonable by at least one commentator. *See* 11 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 151.43 (1998 ed.) (stating the inventory exclusion "is not applicable where the disappearance was discovered upon taking inventory, but at least some of the loss was attributable to theft by persons"). Even cases that have found the

term unambiguous have held that the clause does not apply to situations where the loss is linked to an identifiable external cause. *See, e.g., Dunlop Tire & Rubber Corp. v. Fidelity & Deposit Co.,* 479 F.2d 1243, 1247 (finding that because the only evidence of the insured's loss was an inventory computation that could not be linked to an external cause, the inventory exclusion clause precluded indemnity); *Southern Ins. Co. v. Domino of California, Inc.,* 173 Cal.App.3d 619, 626, 219 Cal. Rptr. 112, 116 (1985) (same).

We find the fact that even decisions finding the phrase in the exclusionary clause unambiguous support the position urged by Betco particularly persuasive. The majority, however, without analysis of any of these decisions, dismisses them as unreasonable. This is not in keeping with the approach taken by this court and the Texas Supreme Court in addressing questions of ambiguity in insurance contracts raised as issues of first impression. Two such decisions from this court are applicable here and are ignored by the majority.

In *Pioneer Chlor Alkali,* 879 S.W.2d 920, and *Bonner v. United Services Auto. Ass'n,* 841 S.W.2d 504 (Tex.App.—Houston [14th Dist.] 1992, writ denied), we addressed disputes of first impression over exclusionary language in insurance contracts. In both cases, we analyzed cases from other jurisdictions and found that some courts favored the interpretation offered by the insurer and some favored that offered by the insured. *See Pioneer Chlor Alkali,* 879 S.W.2d at 929–37; *see also Bonner,* 841 S.W.2d at 507. Based on these differences in opinion, we found the interpretations offered by the insureds were reasonable and held that the exclusionary clause did not apply to the claims.

The Texas Supreme Court has likewise followed this method of analysis in interpreting exclusionary clauses in insurance contracts. As we did in *Pioneer Chlor Alkali* and *Bonner,* the supreme court in *Reed* found that decisions from other jurisdictions supported the interpretations offered by both the insured and the insurer. *See* 873 S.W.2d 698 (Tex.1993). There, the court stated:

> The cases from other jurisdictions support the conclusion that this exclusion and exception are susceptible to more than one reasonable interpretation .... pursuit. We must resolve the uncertainty of a policy exclusion by adopting the construction most favorable to the insured. Based upon an examination of the text of this exclusion and exception and considering other possible reasonable interpretations, we conclude that the provision is ambiguous.

*Id.* at 701.

The majority, however, turns a blind eye to this precedent from our own and other jurisdictions in reaching its conclusion. In so doing, it expresses its concern that in finding another non-binding court's decision reasonable, we are impermissibly following non-binding decisions.[2] To the contrary, our own cases and the cases from our supreme court are binding on us. *See Penrod Drilling Corp. v. Williams,* 868 S.W.2d 294, 296 (Tex.1993). Also, by finding other jurisdictions' interpretations reasonable, we are not binding ourselves to them; rather, we are merely being persuaded by them. At the very least, we should analyze these decisions before deeming them unreasonable. The majority fails to do this, however, and fails to address the ambiguity in relationship to the facts under which it arises.

**2.** This court has addressed this concern in another case. *See Vaughan v. State Farm Lloyds,* 950 S.W.2d 205 (Tex.App.—Houston [14th Dist.] 1997), *rev'd, State Farm Fire & Cas. Co. v. Vaughan,* 968 S.W.2d 931 (Tex. 1998). There, we stated that though we recognized the problems inherent in finding ambiguities based on precedent from other jurisdictions, we were bound to follow this approach since it was utilized by the Texas Supreme court. *See id.* at 209 n. 6. We believe this approach still applies and we are bound to follow it even if we do not like the results.

The appellate court's role in construing an insurance contract with a claimed ambiguity is to determine if the interpretation offered by the insured is reasonable. *See, e.g., Balandran v. Safeco Ins. Co.,* 972 S.W.2d 738, 741 (Tex.1998). As the majority acknowledges, we must adopt a reasonable interpretation of the contract offered by the insured even if that interpretation is less reasonable than the insurer's or is a less accurate reflection of the partes' intentions. *See id.* at 741. Though the majority sets out these standards, it does little more than pay lip service to them in its analysis. Because we believe the decisions from other jurisdictions adopting Betco's construction are reasonable, we would find the inventory exclusion clause inapplicable to this case and would find coverage for Betco.

The majority's analysis is flawed in other ways, as well. The majority contends Betco's interpretation is unreasonable "[b]ased on the overall intent of the policy and the plain meaning and rationale of the inventory exclusion clause." These bases are problematic for several reasons.

First, the majority appears to adopt Houston United's interpretation because it is a more reasonable expression of the parties' intention than that offered by Betco. This directly contravenes *Balandran*'s holding that a reasonable, but less accurate, interpretation of an exclusion offered by an insured should be accepted by an appellate court. *See Balandran,* 972 S.W.2d at 741. The majority should focus on how Betco's interpretation fits into the overall intent of the parties as reflected in the policy rather than which interpretation best meets the "plain language" and "rationale" of the exclusion.

Second, the majority's reliance on the "plain meaning" of the contract is likewise misplaced. It defies logic to rely on the plain meaning of the inventory exclusion when even the majority admits in note seven of its opinion the inventory exclusion does not mean what it plainly says. The exclusion states that Houston United is not liable for losses or shortages "disclosed upon taking inventory." Under the plain language of this clause, Houston United would not be liable for any loss disclosed by an inventory, even if the inventory were intended to quantify the loss. The majority apparently finds this language ambiguous since it states that the exclusion does not apply to inventories intended to quantify a loss. Even so, however, it utilizes the oxymoron of ambiguously plain language in reaching its decision that the inventory exclusion cuts off Houston United's liability.

Finally, though the majority relies on the rationale of the inventory exclusion provision in denying Betco's interpretation, its interpretation fits squarely within that rationale. Houston United urges that the rationale for the inventory exclusion is to insure that an insurance company will not have to indemnify erroneous or falsified inventory, shoplifting, employee dishonesty, inaccurate accounting or losses that are not provable by independent external evidence. This is in keeping with the intent of the policy as expressed in other decisions. *See Dunlop Tire,* 479 F.2d 1243, 1246 (stating the inventory exclusion clause "was designed to protect insurers from claims based on erroneous or falsified inventory or profit and loss computations") (citing *Paramount Paper Prods. Co. v. Aetna Cas. & Surety Co.,* 182 Neb. 828, 157 N.W.2d 763 (1968)). Here, Betco's loss is not merely a loss reflected on paper incapable of being traced to an external source or event. Rather, Betco's loss is traceable to the June 13th and July 3rd burglaries through, at the least, circumstantial evidence. Moreover, the majority's concern that finding the inventory exclusion inapplicable to this case would hamper investigatory efforts by the insurer is misplaced. Such a concern is covered elsewhere in the insurance contract which requires losses to be reported to the insurer within ninety days of the loss, thus providing another ground for an insurer to deny a claim. While the majority may be correct in finding Houston United's interpretation the most reasonable, this does

not foreclose the court from finding Betco's interpretation reasonable, as well.

Because we believe that the interpretation of the inventory exclusion clause offered by Betco is reasonable, we would reverse the judgment of the trial court and remand the case for the resolution of fact issues so that a determination can be made that the losses disclosed by Betco's inventory are indeed linked to the thefts. We are also concerned with the impact of the majority's decision on coverage under "all risk" policies such as the one issued by Houston United to Betco. As the summary judgment proof shows, Houston United denied Betco's claim under the inventory exclusion simply because Betco's inventory revealed the size of the loss. Under the majority's view, any loss disclosed by an inventory, whether or not the loss was due to an event covered under the policy, would not be covered under the policy. The moral of the story told by the majority is that an undetected thief is an insurer's best friend. Since we do not believe this is what was intended under Houston United's policy, we do not join in the majority's decision.

FOWLER, WITTIG and DRAUGHN, JJ., join in this dissent.