COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





RITA ALEMAN,

                                    Appellant,

v.

ZENITH INSURANCE COMPANY and
ROSSANA SALERNO,

                                    Appellees. 

§
 
§
 
§
 
§
 
§

§


No. 08-09-00168-CV

Appeal from
 243rd District Court

of El Paso County, Texas

(TC # 2007-652)



 

 

 




O P I N I O N

            Rita Aleman filed suit against Zenith Insurance and Rossana Salerno alleging bad faith in the
denial of her worker’s compensation claim. She appeals from a summary judgment granted in favor
of Zenith and Salerno. For the reasons that follow, we affirm.
FACTUAL SUMMARY
            Aleman was employed as a packer by Autotronics, an automotive parts manufacturer. Her
job duties required her to package car parts into containers. Zenith provided worker’s compensation
insurance for Autotronics and Salerno was employed by Zenith as a claims examiner. 
            On July 17, 2006, Aleman filed an injury report alleging she had suffered an on-the-job injury
to her right hand on June 28, 2006 while closing shells which were unusually resistant, forcing her
to use excessive pressure. Autotronics immediately referred Aleman to Dr. Manouchehr Refaeian
and she consulted with him the same day. Dr. Refaeian diagnosed her with a right wrist sprain and
right De Quervain’s tenosynovitis. He prescribed Mobisyl cream and directed Aleman to continue
taking Tylenol and Celebrex. Dr. Refaeian also recommended that she decrease repetitive activity
at work involving the right wrist. The following day, Aleman visited a chiropractor, Luis Marioni,
D.C., who diagnosed Aleman with a wrist sprain/strain and carpal tunnel syndrome. 
            Trey Gillespie, Zenith’s litigation director, testified on deposition that Zenith handled
Aleman’s condition as a compensable injury but it continued to investigate the claim. As part of the
investigation, Salerno took Aleman’s statement and spoke with the employer about Aleman’s duties. 
Aleman’s supervisor refuted Aleman’s claim that she packaged 600 orders a day as the entire
packaging department, which consisted of three employees, packaged only 160-165 orders per day. 
According to Gillespie, that discrepancy had a negative impact on Aleman’s credibility. Gillespie
and Salerno also reviewed the available medical information. Aleman stated she was still in pain
five to six weeks after the date of the injury, but that was inconsistent with tendonitis or
tenosynovitis according to the Medical Disability Advisor. Gillespie related in his affidavit that he
concluded there was no objective medical evidence of a wrist sprain/strain, tendonitis, or
tenosynovitis because an MRI performed on July 29, 2006 did not reveal any soft tissue swelling or
tendon damage in the right wrist. With respect to the carpal tunnel syndrome diagnosis, Gillespie
also consulted numerous peer reviewed medical studies which led him to conclude that Aleman’s
work activities would not have caused carpal tunnel syndrome. 
            Based on the information they had gathered, Gillespie and Salerno decided to contest
compensability on August 15, 2006 and Zenith sent notice to Aleman denying any further worker’s
compensation benefits. Zenith subsequently requested a peer review of the claim to determine the
correct diagnosis and whether the medical condition could have been caused by Aleman’s work
activities. Gillespie explained that he decided to contest compensability before requesting the peer
review because he did not believe they would receive the peer review before the statutory sixty-day
deadline for filing the dispute expired.


 Zenith had received notice of Aleman’s claim on July 17,
2006 so that the deadline for contesting compensability would not have expired until September 17,
2006. Thomas C. Diliberti, M.D. performed the peer review on August 21, 2006 and determined that
a definitive diagnosis had not been established and the limited information provided regarding the
work injury was inconsistent with the diagnosis of carpal tunnel syndrome. Likewise, he concluded
that the medical records did not support any significant medical treatment. Dr. Diliberti
recommended a referral to an orthopedic specialist for a definitive diagnosis and treatment plan. 
Although the peer review report was dated August 21, 2006, Zenith did not receive the report until
November 13, 2006. 
              Aleman contested the denial of benefits and the Texas Department of Insurance-Department
of Worker’s Compensation conducted a benefit review conference on October 2, 2006. Aleman
claimed that she had sustained a compensable injury based on a positive nerve conduction study, but
that study had not been provided to Zenith. Zenith received the report on October 13, 2006 and it
reflected that Aleman had carpal tunnel syndrome in both hands but it did not include a diagnosis
of De Quervain’s tenosynovitis. The claim proceeded to a contested case hearing on November 2,
2006 in which Aleman argued she had sustained a compensable work injury in the form of carpal
tunnel syndrome. TDI-DWC determined on November 7, 2006 that Aleman sustained a
compensable occupational disease/injury on June 30, 2006. Zenith did not appeal that decision and
paid Aleman the accrued and unpaid benefits. 
            On December 12, 2006, Gillespie received a peer review report from Timothy Fahey, D.C.
which questioned whether the carpal tunnel syndrome was work-related. Acting on Gillespie’s
recommendation, Zenith requested TDI-DWC to appoint a designated doctor. In the meantime,
Dr. Marioni referred Aleman to Dr. Klein who performed a repeat nerve conduction study on
January 4, 2007. The study was positive for right carpal tunnel syndrome and Dr. Klein’s office
requested approval for carpal tunnel syndrome surgery. Gillespie recommended a peer review by
Dr. Gary Pamplin to determine whether the carpal tunnel syndrome arose out of Aleman’s work
activities. 
            TDI-DWC selected Gregory Baker, D.C. as the designated doctor. Dr. Baker examined
Aleman on February 2, 2007 and concluded she had De Quervain’s tenosynovitis which was work
related. He found that she had reached maximum medical improvement for that injury with no
permanent impairment. He also concluded that she had carpal tunnel syndrome but found that it was
not work-related. 
            On February 6, 2007, Gillespie and Salerno transferred Aleman’s claim into the Zenith
Health Care Network for ongoing medical care given the possibility of future surgery. On February
9, 2007, Zenith filed a dispute with TDI-DWC contesting that the compensable injury extended to
carpal tunnel syndrome. Dr. Klein’s office subsequently changed its surgical request from carpal
tunnel release to De Quervain’s release. 
            TDI-DWC conducted a contested case hearing on benefit review conference on April 5, 2007
to address Zenith’s dispute of the carpal tunnel syndrome but the parties could not reach an
agreement. A contested case hearing was conducted on September 26, 2007 to determine whether
Aleman’s injury extended to and included right carpal tunnel syndrome. Zenith accepted the injury
to the right wrist in the form of a right wrist sprain and right De Quervain’s tendonitis. The hearing
officer found that the evidence was insufficient to causally relate the right carpal tunnel syndrome
to the compensable injury sustained on June 28, 2006. 
            Aleman filed suit alleging Zenith and Salerno violated provisions of the Texas Insurance
Code, the Texas Deceptive Trade Practices Act, and the common law duty of good faith and fair
dealing by denying her worker’s compensation claim in bad faith.


 More specifically, she alleged that
Zenith and Salerno (1) violated Section 541.060(a)(2)(A) of the Insurance Code by failing to attempt
in good faith to effectuate a prompt, fair, and equitable settlement of Aleman’s claim; (2) violated
Section 541.060(a)(3) of the Insurance Code by failing to promptly provide a reasonable explanation
of the basis for Zenith’s denial of the claim; and (3) violated Section 541.060(a)(7) of the Insurance
Code by refusing to pay a claim without conducting a reasonable investigation. Aleman further
alleged that the same conduct violated Sections 17.50(a)(3) and 17.50(a)(4) of the Deceptive Trade
Practices Act


 and the common law duty of good faith and fair dealing because Zenith and Salerno
knew or should have known there was no reasonable basis to deny Aleman’s claim. Zenith and
Salerno filed a motion for traditional and no evidence summary judgment contending that Aleman
could not prove that (1) there was no reasonable basis for the denial of her claim; and (2) Zenith and
Salerno denied Aleman’s claim knowing there was no reasonable basis for the denial. The trial court
granted summary judgment without specifying the precise basis for its ruling. 
BAD FAITH
            Aleman raises four issues on appeal challenging the order granting summary judgment. In
Issues One through Three, she contends that she presented at least a scintilla of evidence that Zenith
and Salerno acted in bad faith by ignoring information which showed that Aleman had a
compensable repetitive trauma injury, and by failing to conduct a proper and objective investigation
before denying her claim. In Issue Four, Aleman alleges that she presented at least a scintilla of
evidence that Zenith and Salerno acted in bad faith by failing to provide her with a reasonable and
clear explanation for their denial of her claim. 
Traditional Summary Judgment
            We begin by addressing the traditional summary judgment motion. The standard of review
for traditional summary judgment under Tex.R.Civ.P. 166a(c) is well established. Nixon v. Mr.
Property Management Company, Inc., 690 S.W.2d 546, 548 (Tex. 1985). The moving party carries
the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a
matter of law. Diversicare General Partner, Inc. v. Rubio, 185 S.W.3d 842, 846 (Tex. 2005);
Browning v. Prostok, 165 S.W.3d 336, 344 (Tex. 2005). Evidence favorable to the non-movant will
be taken as true in deciding whether there is a disputed issue of material fact. Fort Worth
Osteopathic Hospital, Inc. v. Reese, 148 S.W.3d 94, 99 (Tex. 2004). All reasonable inferences,
including any doubts, must be resolved in favor of the non-movant. Id. A defendant is entitled to
summary judgment if the evidence disproves as a matter of law at least one element of each of the
plaintiff’s causes of action or if it conclusively establishes all elements of an affirmative defense. 
D. Houston, Inc. v. Love, 92 S.W.3d 450, 454 (Tex. 2002); Randall’s Food Markets, Inc. v. Johnson,
891 S.W.2d 640, 644 (Tex. 1995). Once the defendant establishes a right to summary judgment as
a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of
material fact. City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 678-79 (Tex. 1979);
Scown v. Neie, 225 S.W.3d 303, 307 (Tex.App.--El Paso 2006, pet. denied).
            An insurer has a common law duty to deal fairly and in good faith with its insured in the
processing and payment of claims. Republic Insurance Company v. Stoker, 903 S.W.2d 338, 340
(Tex. 1995). An insurer will be liable if the insurer denies a claim when the insurer knew or should
have known that it was reasonably clear that the claim was covered. Universe Life Insurance
Company v. Giles, 950 S.W.2d 48, 56 (Tex. 1997). An insurer may also breach its duty of good faith
and fair dealing by failing to reasonably investigate a claim. Giles, 950 S.W.2d at 56.
            Section 541.060 of the Insurance Code identifies nine categories of unfair settlement
practices. Tex.Ins.Code Ann. § 541.060 (West 2009); see Leyva v. Ace American Insurance
Company, ---- S.W.3d ----, 2010 WL 3410044, at *3 (Tex.App.--El Paso August 31, 2010, no pet.). 
The categories include the three grounds relied upon by Aleman: (1) failing to attempt in good faith
to effectuate a prompt, fair, and equitable settlement of a claim where the insurer’s liability has
become reasonably clear; (2) failing to promptly provide to a policyholder a reasonable explanation
of the basis in the policy for the insurer’s denial of a claim or offer of compromise settlement; and
(3) refusing to pay a claim without conducting a reasonable investigation. Tex.Ins.Code Ann. §
541.060(a)(2), (3), and (7). The statutory “reasonably clear” standard is identical to the common law
bad faith standard. Mid-Century Insurance Company of Texas v. Boyte, 80 S.W.3d 546, 549 (Tex.
2002); Giles, 950 S.W.2d at 55. 
            Evidence that merely shows a bona fide dispute about the insurer’s liability on the contract
does not rise to the level of bad faith. Provident American Insurance Company v. Castaneda, 988
S.W.2d 189, 193 (Tex. 1998). The issue of the breach of the duty of good faith and fair dealing
“focuses not on whether the claim was valid, but on the reasonableness of the insurer’s conduct” in
handling the claim. Lyons v. Millers Casualty Insurance Company of Texas, 866 S.W.2d 597, 601
(Tex. 1993). An objective standard is utilized to determine whether a reasonable insurer under
similar circumstances would have delayed or denied payment of the claim. Aranda v. Insurance
Company of North America, 748 S.W.2d 210, 213 (Tex. 1988); Vandeventer v. All American Life
& Casualty Company, 101 S.W.3d 703, 722 (Tex.App.--Fort Worth 2003, no pet.).
Carpal Tunnel Syndrome
            Zenith contested Aleman’s claim on two different occasions. First, it contested
compensability on August 15, 2006. TDI-DWC found that Aleman had sustained a compensable
occupational disease/injury but it did not identify the occupational disease or injury in its written
decision. Zenith later disputed whether Aleman’s compensable injury extended to carpal tunnel
syndrome. TDI-DWC found that the compensable injury did not extend to carpal tunnel syndrome. 
With respect to a bad faith claim based on Zenith’s dispute that the compensable injury extended to
carpal tunnel syndrome, summary judgment was proper. As a general rule, there can be no claim for
bad faith when an insurer has promptly denied a claim that is not covered. Stoker, 903 S.W.2d at
341. The Supreme Court in Stoker did not exclude the possibility that in denying the claim, the
insurer may commit some act, so extreme, that it would cause injury independent of the policy claim. 
Stoker, 903 S.W.2d at 341; see Crocker v. American National General Insurance Company, 211
S.W.3d 928, 936 (Tex.App.--Dallas 2007, no pet.)(discussing this aspect of Stoker). In this case,
however, Aleman has limited her bad faith claim to an assertion that liability was reasonably clear
under the policy. Consequently, we conclude that the trial court properly granted summary judgment
in favor of Zenith and Salerno on a bad faith claim related to Zenith’s dispute that the compensable
injury did not extend to carpal tunnel syndrome.
Wrist Strain/Sprain and Tendonitis
            To prove her bad faith cause of action related to the denial of her claim and benefits on
August 15, 2006, Aleman was required to establish that Zenith denied the claim when it knew or
should have known it was reasonably clear that the claim was covered. Zenith and Salerno sought
to negate this element in the context of their traditional summary judgment motion. To meet their
burden, Zenith and Salerno relied on summary judgment evidence establishing that Zenith made the
decision to dispute compensability on August 15, 2006 because the diagnoses of a wrist sprain/strain
and De Quervain’s tenosynovitis were questionable. Aleman had waited nearly three weeks to report
her injury. She stated during an interview that she packaged 600 orders a day, but her supervisor
refuted this assertion by reporting that the entire department packaged only 160-165 orders per day. 
Aleman’s employer advised Zenith that Aleman’s job duties were so light that they would not be
physically traumatic. Zenith’s decision-makers also considered that the description of Aleman’s job
duties and the mechanism of injury were inconsistent with the medical complaints and
documentation. There was no objective medical evidence of a wrist strain/sprain in the form of
tendonitis or tenosynovitis. An MRI performed on July 29, 2006 revealed no soft tissue swelling
or tendon damage. In contesting the compensability of the injury, Zenith and Salerno also
considered that Aleman was reportedly continuing to suffer from pain in the right wrist and hand five
to six weeks after the date of injury. The Medical Disability Advisor indicated that a patient should
not continue to suffer from tendonitis or tenosynovitis five to six weeks after the date of injury. 
Zenith believed based on the medical information and medical literature that Aleman might be
suffering instead from non-work-related carpal tunnel syndrome. The foregoing evidence
conclusively established that Zenith did not know nor should it have known it was reasonably clear
that the claim was covered. The only remaining issue is whether Aleman carried her burden of 
presenting evidence which raised a genuine issue of material fact.
            In her brief, Aleman relies on the statement in Giles that the question of whether an insurer’s
liability has become reasonably clear presents a fact issue for the jury. Giles, 950 S.W.2d at 56. The
court so held while “reject[ing] the suggestion that whether an insurer’s liability has become
reasonably clear presents a question of law for the court rather than a fact issue for the jury.” Id. We
do not read Giles as holding that a party can never seek summary judgment with respect to whether
its liability has become reasonably clear. 
            Aleman also argues that Zenith’s liability was reasonably clear because all of the medical
experts who examined Aleman opined that she had a work-related injury. Aleman faults Zenith for
ignoring “the obvious information before it that Aleman had sustained a compensable repetitive
trauma injury . . . .” At the time Zenith filed the dispute, however, it had only received the reports
by Dr. Refaeian and Dr. Marioni. Whether liability is reasonably clear must be judged by the facts
before the insurer at the time it denied the claim. See Viles v. Security National Insurance Company,
788 S.W.2d 566, 567 (Tex. 1990)(holding that whether there is a reasonable basis for denial must
be judged by the facts before the insurer at the time it denied the claim). Aleman’s argument ignores
the other evidence Zenith considered when determining whether to contest compensability.
            Aleman further maintains that Zenith and Salerno acted in bad faith because Zenith failed
to conduct a “proper” investigation, including requesting a peer review report, before denying her
claim prior to the statutory deadline. Under the Labor Code, Zenith had only sixty days from the
date it received notice of the injury to contest compensability. Tex.Labor Code Ann. §
409.021(c)(West 2006). While Zenith disputed compensability prior to the expiration of the
statutory deadline and without waiting for the peer review report, its investigation to that point
indicated that it was not reasonably clear that Aleman had sustained a compensable injury. See Betco
Scaffolds Company, Inc. v. Houston United Casualty Insurance Company, 29 S.W.3d 341, 348
(Tex.App.--Houston [14th Dist.] 2000, no pet.)(where the insurer’s investigation revealed sufficient
evidence to legitimately sustain a basis for denial of the claim, insurer did not have obligation to
investigate further). Aleman has not cited any authority for the proposition that Zenith acted in bad
faith by disputing compensability prior to the expiration of the statutory deadline. See id. Further,
Gillespie testified that he decided to contest compensability before requesting the peer review
because he did not believe they would receive the peer review prior to the expiration of the statutory
deadline.
            Aleman next contends that Zenith and Salerno acted in bad faith by failing to investigate the
work site until six months after receiving notice of injury. The summary judgment evidence showed
that Zenith and Salerno investigated the work site both before and after denying Aleman’s claim. 
Salerno had inspected the packaging department when she was assigned as a claims examiner for
Autotronics. Prior to denying Aleman’s claim, Zenith and Salerno also interviewed Aleman and her
supervisor regarding her workplace, working conditions, job duties, and production rate. Aleman
does not identify and we fail to perceive a fact issue which would preclude summary judgment. 
Failure to Provide Sufficient Explanation for the Denial
            Aleman’s final issue addresses her claim that Zenith and Salerno acted in bad faith by failing
to provide a reasonable and clear explanation for the denial of her claim. The notice sent to Aleman
stated that benefits were not being paid because:
Zenith Insurance contests the compensability because there was no injury in the
course and scope of employment. The medical literature does not support a causal
relationship between the work activities and the diagnosed carpal tunnel syndrome. 
Carrier denies that the claimant sustained an accidental injury on 06/28/06 and denies
that the work activities performed on 06/28/06 are a producing cause of the medical
condition. 

Citing Section 124.2(f) of the Texas Administrative Code, Aleman argues on appeal that the notice
is insufficient because Zenith did not identify the medical literature or provide her with a copy. An
insurance carrier is required to notify the claimant of a denial of a claim based on
non-compensability or lack of coverage. Tex.Admin.Code § 124.2(d). Section 124.2(f) further
provides that:
Notification to the claimant as required by subsections (d) and (e) of this section
requires the carrier to use plain language notices with language and content
prescribed by the Commission. These notices shall provide a full and complete
statement describing the carrier’s action and its reason(s) for such action. The
statement must contain sufficient claim-specific substantive information to enable the
employee/legal beneficiary to understand the carrier’s position or action taken on the
claim. A generic statement that simply states the carrier’s position with phrases such
as ‘employee returned to work,’ ‘adjusted for light duty,’ ‘liability is in question,’
‘compensability in dispute,’ ‘under investigation,’ or other similar phrases with no
further description of the factual basis for the action taken does not satisfy the
requirements of this section.

Tex.Admin.Code § 124.2(f).
            The notice was stated in plain language and identified Zenith’s reasons for contesting
compensability. Section 124.2(f) does not impose on Zenith any duty to identify the medical
literature on which it relied or provide copies to her in connection with the notice. Aleman’s
argument is without merit.
            In the context of this same issue, Aleman also maintains that Salerno informed her that
Zenith was disputing her claim because she had diabetes. Aleman then points to Dr. Diliberti’s
opinion that there was no evidence a pre-existing condition was the source of Aleman’s complaints
and injury. She concludes that this is some evidence Zenith wrongfully denied her claim. This
argument is unrelated to Aleman’s complaint regarding the sufficiency of the notice. Further, it does
not create a fact issue in connection with the other bad faith claims.
            In conclusion, none of the evidence or arguments relied on by Aleman demonstrates the
existence of a genuine issue of material fact which would preclude traditional summary judgment
on her bad faith claims. Having found that Zenith and Salerno conclusively established their
entitlement to summary judgment, we overrule Issues One through Four. It is therefore unnecessary
that we address the arguments related to the no evidence summary judgment grounds. We affirm
the judgment of the trial court.

May 4, 2011                                                                
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.