COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

§

RITA ALEMAN,                                                          No. 08-09-00168-CV

§

        Appellant,                                           Appeal from

§

v.                                                                          243rd District Court

§

ZENITH INSURANCE COMPANY and                          of El Paso County, Texas
ROSSANA SALERNO,                        §

                                                             (TC # 2007-652)

        Appellees.                        §

**O P I N I O N**

Rita Aleman filed suit against Zenith Insurance and Rossana Salerno alleging bad faith in the denial of her worker's compensation claim. She appeals from a summary judgment granted in favor of Zenith and Salerno. For the reasons that follow, we affirm.

**FACTUAL SUMMARY**

Aleman was employed as a packer by Autotronics, an automotive parts manufacturer. Her job duties required her to package car parts into containers. Zenith provided worker's compensation insurance for Autotronics and Salerno was employed by Zenith as a claims examiner.

On July 17, 2006, Aleman filed an injury report alleging she had suffered an on-the-job injury to her right hand on June 28, 2006 while closing shells which were unusually resistant, forcing her to use excessive pressure. Autotronics immediately referred Aleman to Dr. Manouchehr Refaeian and she consulted with him the same day. Dr. Refaeian diagnosed her with a right wrist sprain and right De Quervain's tenosynovitis. He prescribed Mobisyl cream and directed Aleman to continue taking Tylenol and Celebrex. Dr. Refaeian also recommended that she decrease repetitive activity

at work involving the right wrist. The following day, Aleman visited a chiropractor, Luis Marioni, D.C., who diagnosed Aleman with a wrist sprain/strain and carpal tunnel syndrome.

Trey Gillespie, Zenith's litigation director, testified on deposition that Zenith handled Aleman's condition as a compensable injury but it continued to investigate the claim. As part of the investigation, Salerno took Aleman's statement and spoke with the employer about Aleman's duties. Aleman's supervisor refuted Aleman's claim that she packaged 600 orders a day as the entire packaging department, which consisted of three employees, packaged only 160-165 orders per day. According to Gillespie, that discrepancy had a negative impact on Aleman's credibility. Gillespie and Salerno also reviewed the available medical information. Aleman stated she was still in pain five to six weeks after the date of the injury, but that was inconsistent with tendonitis or tenosynovitis according to the Medical Disability Advisor. Gillespie related in his affidavit that he concluded there was no objective medical evidence of a wrist sprain/strain, tendonitis, or tenosynovitis because an MRI performed on July 29, 2006 did not reveal any soft tissue swelling or tendon damage in the right wrist. With respect to the carpal tunnel syndrome diagnosis, Gillespie also consulted numerous peer reviewed medical studies which led him to conclude that Aleman's work activities would not have caused carpal tunnel syndrome.

Based on the information they had gathered, Gillespie and Salerno decided to contest compensability on August 15, 2006 and Zenith sent notice to Aleman denying any further worker's compensation benefits. Zenith subsequently requested a peer review of the claim to determine the correct diagnosis and whether the medical condition could have been caused by Aleman's work activities. Gillespie explained that he decided to contest compensability before requesting the peer review because he did not believe they would receive the peer review before the statutory sixty-day

deadline for filing the dispute expired.[1]  Zenith had received notice of Aleman's claim on July 17, 2006 so that the deadline for contesting compensability would not have expired until September 17, 2006.  Thomas C. Diliberti, M.D. performed the peer review on August 21, 2006 and determined that a definitive diagnosis had not been established and the limited information provided regarding the work injury was inconsistent with the diagnosis of carpal tunnel syndrome.  Likewise, he concluded that the medical records did not support any significant medical treatment.  Dr. Diliberti recommended a referral to an orthopedic specialist for a definitive diagnosis and treatment plan.  Although the peer review report was dated August 21, 2006, Zenith did not receive the report until November 13, 2006.

Aleman contested the denial of benefits and the Texas Department of Insurance-Department of Worker's Compensation conducted a benefit review conference on October 2, 2006.  Aleman claimed that she had sustained a compensable injury based on a positive nerve conduction study, but that study had not been provided to Zenith.  Zenith received the report on October 13, 2006 and it reflected that Aleman had carpal tunnel syndrome in both hands but it did not include a diagnosis of De Quervain's tenosynovitis.  The claim proceeded to a contested case hearing on November 2, 2006 in which Aleman argued she had sustained a compensable work injury in the form of carpal tunnel syndrome.  TDI-DWC determined on November 7, 2006 that Aleman sustained a compensable occupational disease/injury on June 30, 2006.  Zenith did not appeal that decision and paid Aleman the accrued and unpaid benefits.

On December 12, 2006, Gillespie received a peer review report from Timothy Fahey, D.C. which questioned whether the carpal tunnel syndrome was work-related.  Acting on Gillespie's

---

[1]  The Labor Code provides that if an insurance carrier does not contest compensability on or before the 60th day after the date on which the insurance carrier is notified of the injury, the insurance carrier waives its right to contest compensability.  TEX.LABOR CODE ANN. § 409.021(c)(West 2006).

recommendation, Zenith requested TDI-DWC to appoint a designated doctor. In the meantime, Dr. Marioni referred Aleman to Dr. Klein who performed a repeat nerve conduction study on January 4, 2007. The study was positive for right carpal tunnel syndrome and Dr. Klein's office requested approval for carpal tunnel syndrome surgery. Gillespie recommended a peer review by Dr. Gary Pamplin to determine whether the carpal tunnel syndrome arose out of Aleman's work activities.

TDI-DWC selected Gregory Baker, D.C. as the designated doctor. Dr. Baker examined Aleman on February 2, 2007 and concluded she had De Quervain's tenosynovitis which was work related. He found that she had reached maximum medical improvement for that injury with no permanent impairment. He also concluded that she had carpal tunnel syndrome but found that it was not work-related.

On February 6, 2007, Gillespie and Salerno transferred Aleman's claim into the Zenith Health Care Network for ongoing medical care given the possibility of future surgery. On February 9, 2007, Zenith filed a dispute with TDI-DWC contesting that the compensable injury extended to carpal tunnel syndrome. Dr. Klein's office subsequently changed its surgical request from carpal tunnel release to De Quervain's release.

TDI-DWC conducted a contested case hearing on benefit review conference on April 5, 2007 to address Zenith's dispute of the carpal tunnel syndrome but the parties could not reach an agreement. A contested case hearing was conducted on September 26, 2007 to determine whether Aleman's injury extended to and included right carpal tunnel syndrome. Zenith accepted the injury to the right wrist in the form of a right wrist sprain and right De Quervain's tendonitis. The hearing officer found that the evidence was insufficient to causally relate the right carpal tunnel syndrome to the compensable injury sustained on June 28, 2006.

Aleman filed suit alleging Zenith and Salerno violated provisions of the Texas Insurance Code, the Texas Deceptive Trade Practices Act, and the common law duty of good faith and fair dealing by denying her worker's compensation claim in bad faith.[2] More specifically, she alleged that Zenith and Salerno (1) violated Section 541.060(a)(2)(A) of the Insurance Code by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Aleman's claim; (2) violated Section 541.060(a)(3) of the Insurance Code by failing to promptly provide a reasonable explanation of the basis for Zenith's denial of the claim; and (3) violated Section 541.060(a)(7) of the Insurance Code by refusing to pay a claim without conducting a reasonable investigation. Aleman further alleged that the same conduct violated Sections 17.50(a)(3) and 17.50(a)(4) of the Deceptive Trade Practices Act[3] and the common law duty of good faith and fair dealing because Zenith and Salerno knew or should have known there was no reasonable basis to deny Aleman's claim. Zenith and Salerno filed a motion for traditional and no evidence summary judgment contending that Aleman could not prove that (1) there was no reasonable basis for the denial of her claim; and (2) Zenith and Salerno denied Aleman's claim knowing there was no reasonable basis for the denial. The trial court granted summary judgment without specifying the precise basis for its ruling.

## BAD FAITH

Aleman raises four issues on appeal challenging the order granting summary judgment. In Issues One through Three, she contends that she presented at least a scintilla of evidence that Zenith and Salerno acted in bad faith by ignoring information which showed that Aleman had a compensable repetitive trauma injury, and by failing to conduct a proper and objective investigation

---

[2] Aleman filed suit on February 6, 2007. Gillespie stated in his affidavit that he did not receive a copy of the suit until March 5, 2007.

[3] Section 17.50(a)(3) prohibits any unconscionable action or course of action by any person. TEX.BUS.&COM.CODE ANN. § 17.50(a)(3)(West 2011). Section (a)(4) prohibits the use or employment by any person of an act or practice in violation of Chapter 541 of the Insurance Code. TEX.BUS.&COM.CODE ANN. § 17.50(a)(4).

before denying her claim. In Issue Four, Aleman alleges that she presented at least a scintilla of evidence that Zenith and Salerno acted in bad faith by failing to provide her with a reasonable and clear explanation for their denial of her claim.

## Traditional Summary Judgment

We begin by addressing the traditional summary judgment motion. The standard of review for traditional summary judgment under TEX.R.CIV.P. 166a(c) is well established. *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). The moving party carries the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005). Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed issue of material fact. *Fort Worth Osteopathic Hospital, Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004). All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. *Id*. A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action or if it conclusively establishes all elements of an affirmative defense. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002); *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Once the defendant establishes a right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678-79 (Tex. 1979); *Scown v. Neie*, 225 S.W.3d 303, 307 (Tex.App.--El Paso 2006, pet. denied).

An insurer has a common law duty to deal fairly and in good faith with its insured in the processing and payment of claims. *Republic Insurance Company v. Stoker*, 903 S.W.2d 338, 340 (Tex. 1995). An insurer will be liable if the insurer denies a claim when the insurer knew or should

have known that it was reasonably clear that the claim was covered. *Universe Life Insurance Company v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997). An insurer may also breach its duty of good faith and fair dealing by failing to reasonably investigate a claim. *Giles*, 950 S.W.2d at 56.

Section 541.060 of the Insurance Code identifies nine categories of unfair settlement practices. TEX.INS.CODE ANN. § 541.060 (West 2009); *see Leyva v. Ace American Insurance Company*, ---- S.W.3d ----, 2010 WL 3410044, at *3 (Tex.App.--El Paso August 31, 2010, no pet.). The categories include the three grounds relied upon by Aleman: (1) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim where the insurer's liability has become reasonably clear; (2) failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy for the insurer's denial of a claim or offer of compromise settlement; and (3) refusing to pay a claim without conducting a reasonable investigation. TEX.INS.CODE ANN. § 541.060(a)(2), (3), and (7). The statutory "reasonably clear" standard is identical to the common law bad faith standard. *Mid-Century Insurance Company of Texas v. Boyte*, 80 S.W.3d 546, 549 (Tex. 2002); *Giles*, 950 S.W.2d at 55.

Evidence that merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith. *Provident American Insurance Company v. Castaneda*, 988 S.W.2d 189, 193 (Tex. 1998). The issue of the breach of the duty of good faith and fair dealing "focuses not on whether the claim was valid, but on the reasonableness of the insurer's conduct" in handling the claim. *Lyons v. Millers Casualty Insurance Company of Texas*, 866 S.W.2d 597, 601 (Tex. 1993). An objective standard is utilized to determine whether a reasonable insurer under similar circumstances would have delayed or denied payment of the claim. *Aranda v. Insurance Company of North America*, 748 S.W.2d 210, 213 (Tex. 1988); *Vandeventer v. All American Life & Casualty Company*, 101 S.W.3d 703, 722 (Tex.App.--Fort Worth 2003, no pet.).

## Carpal Tunnel Syndrome

Zenith contested Aleman's claim on two different occasions. First, it contested compensability on August 15, 2006. TDI-DWC found that Aleman had sustained a compensable occupational disease/injury but it did not identify the occupational disease or injury in its written decision. Zenith later disputed whether Aleman's compensable injury extended to carpal tunnel syndrome. TDI-DWC found that the compensable injury did not extend to carpal tunnel syndrome. With respect to a bad faith claim based on Zenith's dispute that the compensable injury extended to carpal tunnel syndrome, summary judgment was proper. As a general rule, there can be no claim for bad faith when an insurer has promptly denied a claim that is not covered. *Stoker*, 903 S.W.2d at 341. The Supreme Court in *Stoker* did not exclude the possibility that in denying the claim, the insurer may commit some act, so extreme, that it would cause injury independent of the policy claim. *Stoker*, 903 S.W.2d at 341; *see Crocker v. American National General Insurance Company*, 211 S.W.3d 928, 936 (Tex.App.--Dallas 2007, no pet.)(discussing this aspect of *Stoker*). In this case, however, Aleman has limited her bad faith claim to an assertion that liability was reasonably clear under the policy. Consequently, we conclude that the trial court properly granted summary judgment in favor of Zenith and Salerno on a bad faith claim related to Zenith's dispute that the compensable injury did not extend to carpal tunnel syndrome.

## Wrist Strain/Sprain and Tendonitis

To prove her bad faith cause of action related to the denial of her claim and benefits on August 15, 2006, Aleman was required to establish that Zenith denied the claim when it knew or should have known it was reasonably clear that the claim was covered. Zenith and Salerno sought to negate this element in the context of their traditional summary judgment motion. To meet their burden, Zenith and Salerno relied on summary judgment evidence establishing that Zenith made the

decision to dispute compensability on August 15, 2006 because the diagnoses of a wrist sprain/strain and De Quervain's tenosynovitis were questionable. Aleman had waited nearly three weeks to report her injury. She stated during an interview that she packaged 600 orders a day, but her supervisor refuted this assertion by reporting that the entire department packaged only 160-165 orders per day. Aleman's employer advised Zenith that Aleman's job duties were so light that they would not be physically traumatic. Zenith's decision-makers also considered that the description of Aleman's job duties and the mechanism of injury were inconsistent with the medical complaints and documentation. There was no objective medical evidence of a wrist strain/sprain in the form of tendonitis or tenosynovitis. An MRI performed on July 29, 2006 revealed no soft tissue swelling or tendon damage. In contesting the compensability of the injury, Zenith and Salerno also considered that Aleman was reportedly continuing to suffer from pain in the right wrist and hand five to six weeks after the date of injury. The Medical Disability Advisor indicated that a patient should not continue to suffer from tendonitis or tenosynovitis five to six weeks after the date of injury. Zenith believed based on the medical information and medical literature that Aleman might be suffering instead from non-work-related carpal tunnel syndrome. The foregoing evidence conclusively established that Zenith did not know nor should it have known it was reasonably clear that the claim was covered. The only remaining issue is whether Aleman carried her burden of presenting evidence which raised a genuine issue of material fact.

In her brief, Aleman relies on the statement in *Giles* that the question of whether an insurer's liability has become reasonably clear presents a fact issue for the jury. *Giles*, 950 S.W.2d at 56. The court so held while "reject[ing] the suggestion that whether an insurer's liability has become reasonably clear presents a question of law for the court rather than a fact issue for the jury." *Id.* We do not read *Giles* as holding that a party can never seek summary judgment with respect to whether

its liability has become reasonably clear.

Aleman also argues that Zenith's liability was reasonably clear because all of the medical experts who examined Aleman opined that she had a work-related injury. Aleman faults Zenith for ignoring "the obvious information before it that Aleman had sustained a compensable repetitive trauma injury . . . ." At the time Zenith filed the dispute, however, it had only received the reports by Dr. Refaeian and Dr. Marioni. Whether liability is reasonably clear must be judged by the facts before the insurer at the time it denied the claim. *See Viles v. Security National Insurance Company*, 788 S.W.2d 566, 567 (Tex. 1990)(holding that whether there is a reasonable basis for denial must be judged by the facts before the insurer at the time it denied the claim). Aleman's argument ignores the other evidence Zenith considered when determining whether to contest compensability.

Aleman further maintains that Zenith and Salerno acted in bad faith because Zenith failed to conduct a "proper" investigation, including requesting a peer review report, before denying her claim prior to the statutory deadline. Under the Labor Code, Zenith had only sixty days from the date it received notice of the injury to contest compensability. TEX.LABOR CODE ANN. § 409.021(c)(West 2006). While Zenith disputed compensability prior to the expiration of the statutory deadline and without waiting for the peer review report, its investigation to that point indicated that it was not reasonably clear that Aleman had sustained a compensable injury. *See Betco Scaffolds Company, Inc. v. Houston United Casualty Insurance Company*, 29 S.W.3d 341, 348 (Tex.App.--Houston [14th Dist.] 2000, no pet.)(where the insurer's investigation revealed sufficient evidence to legitimately sustain a basis for denial of the claim, insurer did not have obligation to investigate further). Aleman has not cited any authority for the proposition that Zenith acted in bad faith by disputing compensability prior to the expiration of the statutory deadline. *See id.* Further, Gillespie testified that he decided to contest compensability before requesting the peer review

because he did not believe they would receive the peer review prior to the expiration of the statutory deadline.

Aleman next contends that Zenith and Salerno acted in bad faith by failing to investigate the work site until six months after receiving notice of injury. The summary judgment evidence showed that Zenith and Salerno investigated the work site both before and after denying Aleman's claim. Salerno had inspected the packaging department when she was assigned as a claims examiner for Autotronics. Prior to denying Aleman's claim, Zenith and Salerno also interviewed Aleman and her supervisor regarding her workplace, working conditions, job duties, and production rate. Aleman does not identify and we fail to perceive a fact issue which would preclude summary judgment.

## Failure to Provide Sufficient Explanation for the Denial

Aleman's final issue addresses her claim that Zenith and Salerno acted in bad faith by failing to provide a reasonable and clear explanation for the denial of her claim. The notice sent to Aleman stated that benefits were not being paid because:

> Zenith Insurance contests the compensability because there was no injury in the course and scope of employment. The medical literature does not support a causal relationship between the work activities and the diagnosed carpal tunnel syndrome. Carrier denies that the claimant sustained an accidental injury on 06/28/06 and denies that the work activities performed on 06/28/06 are a producing cause of the medical condition.

Citing Section 124.2(f) of the Texas Administrative Code, Aleman argues on appeal that the notice is insufficient because Zenith did not identify the medical literature or provide her with a copy. An insurance carrier is required to notify the claimant of a denial of a claim based on non-compensability or lack of coverage. TEX.ADMIN.CODE § 124.2(d). Section 124.2(f) further provides that:

> Notification to the claimant as required by subsections (d) and (e) of this section requires the carrier to use plain language notices with language and content

prescribed by the Commission. These notices shall provide a full and complete statement describing the carrier's action and its reason(s) for such action. The statement must contain sufficient claim-specific substantive information to enable the employee/legal beneficiary to understand the carrier's position or action taken on the claim. A generic statement that simply states the carrier's position with phrases such as 'employee returned to work,' 'adjusted for light duty,' 'liability is in question,' 'compensability in dispute,' 'under investigation,' or other similar phrases with no further description of the factual basis for the action taken does not satisfy the requirements of this section.

TEX.ADMIN.CODE § 124.2(f).

The notice was stated in plain language and identified Zenith's reasons for contesting compensability. Section 124.2(f) does not impose on Zenith any duty to identify the medical literature on which it relied or provide copies to her in connection with the notice. Aleman's argument is without merit.

In the context of this same issue, Aleman also maintains that Salerno informed her that Zenith was disputing her claim because she had diabetes. Aleman then points to Dr. Diliberti's opinion that there was no evidence a pre-existing condition was the source of Aleman's complaints and injury. She concludes that this is some evidence Zenith wrongfully denied her claim. This argument is unrelated to Aleman's complaint regarding the sufficiency of the notice. Further, it does not create a fact issue in connection with the other bad faith claims.

In conclusion, none of the evidence or arguments relied on by Aleman demonstrates the existence of a genuine issue of material fact which would preclude traditional summary judgment on her bad faith claims. Having found that Zenith and Salerno conclusively established their entitlement to summary judgment, we overrule Issues One through Four. It is therefore unnecessary that we address the arguments related to the no evidence summary judgment grounds. We affirm the judgment of the trial court.

May 4, 2011

_____
ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.