**Opinion issued May 12, 2015.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00170-CV

_____

**FIRST AMERICAN TITLE INSURANCE COMPANY, Appellant**

**V.**

**PATRIOT BANK, Appellee**

And

**PATRIOT BANK, Appellant**

**V.**

**FIRST AMERICAN TITLE INSURANCE COMPANY, Appellee**

---

On Appeal from the 61st District Court
Harris County, Texas
Trial Court Case No. 2012-47633

---

# MEMORANDUM OPINION

After title to property insured by a title insurance policy issued by First American Title Insurance Company failed, Patriot Bank sued First American for common-law bad faith, unfair claims settlement practices under the Texas Insurance Code, and breach of contract. Both parties filed motions for summary judgment, which the trial court granted in part, and denied in part.

First American and Patriot filed cross-appeals challenging different aspects of the trial court's judgment. In two appellate issues, First American argues that (1) the trial court erred by granting Patriot's motion for summary judgment on its breach of contract claim and awarding Patriot $1.5 million in damages under the title insurance policy, and (2) the trial court erred by granting summary judgment awarding Patriot its attorney's fees. Patriot argues that the trial court erred by granting First American's motion for summary judgment on Patriot's common law bad faith and insurance code violation claims. We reverse the trial court's judgment with respect to the breach of contract claim and award of attorney's fees and costs to Patriot, and remand for further proceedings on these issues, and we affirm the trial court's grant of summary judgment in First American's favor on Patriot's common law bad faith and insurance code violation claims.

## Background

In April 2009, Patriot made a $1.5 million working capital loan (the Loan) to Tantalus Bay, LLC, which was secured by a deed of trust (Deed of Trust) that

created a first lien on two small tracts in Galveston County[1] that Tantalus had recently purchased for $59,000 (the Property), as well as a second lien on a contiguous 59.5 acre tract. First American issued a Loan Policy of Title Insurance to Patriot insuring title to the Property and the 59.5 acre tract (the Policy), for which Patriot paid a premium of $7,405.

The Policy provides that the amount of the loss payable to Patriot for a covered claim is determined by Paragraph 8, which states in relevant part:

> This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by [Patriot] who has suffered loss or damage by reason on the matter insured against by this policy.
>
> (a) The extent of liability of [First American] for loss or damage under this policy shall not exceed the least of:
>
> (1) The Amount of Insurance;
>
> (2) The Indebtedness; [or]
>
> (3) The difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.

The Policy defines "Title" as "the estate or interest described in Schedule A." Schedule A states that the "estate or interest in the Land that is encumbered by the Insured Mortgage" is "[f]ee simple," and that such estate or interest "is insured as vested in" Tantalus. "Land" is defined as the Property and the contiguous 59.5 acre tract. The term "Insured Mortgage" is defined as the Deed of Trust.

---

[1] The Property is comprised of an 8.225 acre tract and a 7.5 acre tract.

Tantalus defaulted on the Loan; Patriot foreclosed on the first lien and purchased the Property at auction for $1,176,337 in March 2010. However, a third party successfully asserted an adverse claim of ownership to the Property. Patriot submitted a claim under the Policy in February 2012 for $1.5 million based on a complete failure of title. First American did not dispute that title to the Property failed and obtained an appraisal of the Property. The appraisal valued the Property at $205,000 as of June 2012, which was more than three times the value of the Property when Tantalus acquired it three years earlier. First American tendered payment of $205,000 to Patriot, but Patriot rejected this payment and sued First American for common-law bad faith, statutory bad faith (i.e., unfair claims settlement practices under the Texas Insurance Code), and breach of contract. Patriot requested actual damages in the entire amount of the loss, $1.5 million, and attorney's fees.

Patriot moved for summary judgment on its claims for common-law and statutory bad faith, and breach of contract. First American also moved for a traditional summary judgment on Patriot's bad faith claims. The trial court granted summary judgment in First American's favor on Patriot's common-law and statutory bad faiths claims and ordered that Patriot take nothing on those claims. The trial court also granted summary judgment in Patriot's favor on its breach of contract claim and awarded Patriot $1.5 million in actual damages and awarded

4

Patriot $86,799.25 in reasonable attorney's fees and costs, plus additional attorney's fees in the event of appeal.

Patriot and First American both appealed.

## Breach of Contract

First American argues that the trial court erred by granting Patriot's motion for summary judgment on Patriot's breach of contract claim and awarding Patriot $1.5 million in damages under the Policy because there is a question of material fact regarding the amount of damages due under the Policy that precludes the granting of summary judgment on this issue.

**A.     Standard of Review and Applicable Law**

We review a trial court's grant or denial of a motion for summary judgment de novo. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A party moving for traditional summary judgment has the burden of establishing that no genuine issues of material fact exist and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Knott*, 128 S.W.3d at 215–16. In reviewing a traditional summary judgment, we consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in favor of the nonmovant. *Dorsett*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215.

The elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). "A title insurance policy is a contract of indemnity." *Chicago Title Ins. Co. v. McDaniel*, 875 S.W.2d 310, 311 (Tex. 1994) (*citing S. Title Guar. Co. v. Prendergast*, 494 S.W.2d 154, 158 (Tex. 1973)). The issuance of a policy does not constitute a guarantee or representation as to the status of title. *McDaniel*, 875 S.W.2d at 311. Instead, it obligates the title insurer to pay the loss or damage suffered by the insured as a result of the title defect. *Id.*

We analyze disputes over the interpretation of insurance contracts under the well-established principles of contract construction, attempting to determine the parties' intent through the written language of the policy. *See Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). We examine the entire policy and seek to harmonize and give effect to all provisions so that none will be meaningless or inoperative. *Id.* If a contract for insurance has a clear and definite meaning, then it is not ambiguous as a matter of law, even if the parties interpret the policy differently. *Id.* at 133.

**B.     Analysis**

Patriot moved for summary judgment on its breach of contract claim and, relying upon Paragraph 8(a)(3) of the Policy, argued that its loss payable under the Policy was the "value of the Title as insured" minus "the value of the Title subject to the risk insured against by the Policy." Patriot asserted that because there was a complete failure of title to the Property, "the value of the Title subject to the risk insured against by the Policy" was zero. Thus, the payable loss in this case was the "value of the Title as insured," which was $1.5 million, the full amount of the Loan. First American contends that "the value of the Title as insured" refers to the fair market value of the Property and the contiguous 59.5 acre tract, not the amount of the Loan.

As with any contract interpretation dispute, we begin our analysis by looking to the plain language of the contract itself. Paragraph 8(a) of the Policy sets forth the method for calculating the amount of the loss payable to Patriot for a covered claim and expressly states that First American's liability for any such loss "shall not exceed the least of: (1) The Amount of Insurance; (2) The Indebtedness; [or] (3) The difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy."

The "Amount of Insurance" is defined in the Policy as the principal amount of the Loan (i.e., $1.5 million). The Policy also defines "Title" as "the estate or

interest described in Schedule A." Schedule A states that the "estate or interest in the Land that is encumbered by the Insured Mortgage" is "[f]ee simple," and that such estate or interest "is insured as vested in" Tantalus. "Land" is defined as the Property and the contiguous 59.5 acre tract. The term "Insured Mortgage" means the Deed of Trust.

Thus, under the plain language of the Policy, "the value of the Title as insured" means the value of Tantalus' fee simple estate[2] in the Property and the contiguous 59.5 acre tract that is encumbered by the Deed of Trust or, in other words, the value of the Property and the contiguous 59.5 acre tract.

This interpretation is consistent with binding Texas case law holding that loan policies insure only against losses attributable to defects in title, and do not make the insurer a guarantor of the loan itself. *See Sw. Title Ins. Co. v. Northland Bldg. Corp.*, 552 S.W.2d 425, 430 (Tex. 1977) (rejecting insured's argument that defect in security made title company insurer of note and stating "the payment of the note is not insured. The insurer underwrites only against loss due to a defect in the security."); *see also McDaniel*, 875 S.W.2d at 311 (holding that title insurance policy is not guarantee or representation of title); *see, e.g.,* STEVEN PLITT, ET AL., 12 COUCH ON INSURANCE § 185.88 (3d. ed. 1995) ("if the value of the mortgaged

---

[2] A fee simple estate is an estate over which the owner has unlimited power of disposition in perpetuity without condition or limitation. *See Cooley v. Williams*, 31 S.W.3d 810, 813 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (citing *Walker v. Foss*, 930 S.W.2d 701, 706 (Tex. App.—San Antonio 1996, no writ)).

property is less than the amount due on the mortgage, it has generally been held or recognized that the mortgagee can recover only the value of the property, not the amount due on the mortgage").

We further note that Patriot's alternative interpretation which essentially defines "the value of the Title as insured" as the principal amount of the Loan is not only unsupported by the plain text of Paragraph 8(a)(3) which says nothing about the value of the Loan, but it is also an unreasonable interpretation of the Policy in light of the fact that the principal amount of the Loan is already defined in the Policy as the "Amount of Insurance." Interpreting the "value of the Title as insured" and "Amount of Insurance" to have essentially the same meaning would violate one of the basic principles of contract interpretation because it would render one or the other term meaningless or redundant. *See DaimlerChrysler Motors Co. v. Manuel*, 362 S.W.3d 160, 174 (Tex. App.—Fort Worth 2012, no pet.) (holding that construing different terms to have same meaning would render some words meaningless); *see also Gilbert Tex. Constr.*, 327 S.W.3d at 126 (stating that courts seek to harmonize and give effect to all contractual provisions so that none will be meaningless or inoperative).[3]

---

[3] On appeal, Patriot cites to three federal opinions applying Louisiana law that Patriot argues supports its assertion that, for purposes of establishing the proper measure of damages under the Policy, "the value of the property is irrelevant." *See, e.g., First Am. Bank v. First Am. Transp. Title Ins. Co.*, 759 F.3d 427 (5th Cir. 2014); *Levy Gardens Partners 2007, L.P. v. Commonwealth Land Title Ins. Co.*,

Accordingly, we hold that "the value of the Title as insured," as set forth in in Paragraph 8(a)(3), means the value of Tantalus' fee simple estate in the Property and the contiguous 59.5 acre tract that is encumbered by the Deed of Trust or, in other words, the value of the Property and the contiguous 59.5 acre tract. Because the Policy provides that First American's liability under the Policy "*shall not exceed the least of*: (1) The Amount of Insurance; (2) The Indebtedness; [or] (3) The difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy," Patriot was required to bring forth evidence establishing each of these amounts in order to establish its entitlement to judgment as a matter of law on its breach of contract claim. The record reflects that Patriot, who argued that the value of the underlying property was irrelevant, offered no evidence of the value of the Property or of the contiguous 59.5 acre tract in support of its motion for summary judgment.

Accordingly, we hold that Patriot failed to establish its entitlement to judgment as a matter of law on its breach of contract claim.

706 F.3d 622 (5th Cir. 2013); *First Am. Bank v. First Am. Transp. Title Ins. Co.*, 585 F.3d 833 (5th Cir. 2009). These federal cases are not binding authority and, more importantly, none of these cases actually supports Patriot's position that the value of the underlying property is irrelevant for purposes of calculating the loss payable under the type of policy involved here because "the value of the title as insured" is equal to the principal amount of the loan secured by the underlying property. *See, e.g., First Am. Bank*, 585 F.3d at 837–38 (holding district court erred by calculating difference in value "solely by the proceeds recovered from the foreclosure sale," and remanding for determination of value based upon "any appraisals, the foreclosure proceeds, and other market data").

10

We sustain First American's first issue.

**Attorney's Fees**

Patriot pleaded for attorney's fees based on Insurance Code section 541.152(a)(l), and, alternatively, Civil Practice & Remedies Code section 38.001(8). *See* TEX. INS. CODE ANN. § 541.152(a)(1) (West Supp. 2014) ("A plaintiff who prevails in an action under this subchapter may obtain . . . the amount of actual damages, plus court costs and reasonable and necessary attorney's fees"); TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) ("A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract."). The trial court granted summary judgment in First American's favor on Patriot's Insurance Code violation claims and ordered that Patriot take nothing on those claims. Accordingly, the trial court could only have granted summary judgment to Patriot on its attorney's fees pursuant to section 38.001(8). *See Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P.*, 417 S.W.3d 46, 61 (Tex. App.— Houston [1st Dist.] 2013, pet. denied) (refusing to consider party's argument that it was entitled to attorney's fees under contract provision because party only pleaded for attorney's fees pursuant to Civil Practice and Remedies Code); *see also* TEX. R. CIV. P. 301 (providing that court's judgment shall conform to pleadings). To obtain an award of attorney's fees under section 38.001, "a party must (1) prevail on a

11

cause of action for which attorney's fees are recoverable, and (2) recover damages." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). In light of our conclusion that the trial court erred in granting summary judgment to Patriot on its breach of contract claim, Patriot has not prevailed on this claim, and therefore, Patriot is not entitled to attorney's fees pursuant to Civil Practice & Remedies Code section 38.001(8). *See id.*

We sustain First American's second issue.

### Common Law and Statutory Bad Faith

Patriot argues that the trial court erred by granting First American's motion for summary judgment on Patriot's common law and statutory bad faith claims brought pursuant to Chapters 541 and 542 of the Insurance Code because the only evidence offered in support of the motion—Patriot's discovery responses—raised genuine issues of material fact.

### A.     Standard of Review

When both sides move for summary judgment, and the trial court grants one motion and denies the other, as in this case, reviewing courts consider both sides' summary-judgment evidence, determine all questions presented, and "render the judgment the trial court should have rendered." *Gilbert Tex. Constr.*, 327 S.W.3d at 124. When both motions for summary judgment are properly before the trial court when it ruled on the motions, all evidence accompanying both motions

should be considered in deciding them. *DeBord v. Muller*, 446 S.W.2d 299, 301 (Tex. 1969); *Kimble v. Aetna Cas. & Surety Co.*, 767 S.W.2d 846, 847 (Tex. App.—Amarillo 1989, writ denied).

## B.    Summary Judgment Evidence

Patriot claims that First American did not establish its entitlement to summary judgment on Patriot's bad faith claims because the only evidence First American offered in support of its motion was Patriot's discovery responses and those responses raised genuine issues of material fact. First American argues that it was entitled to summary judgment on Patriot's bad faith claims because the evidence before the court included an affidavit from Matt Shelkey, Vice President and Regional Claims Manager for First American, which "by itself was more than enough to demonstrate that First American had a reasonable basis to deny Patriot's claim in excess of $205,000." Patriot counters that First American cannot rely on Shelkey's affidavit because it was attached to First American's response to Patriot's motion for summary judgment, not First American's motion for summary judgment.

Both First American and Patriot moved for summary judgment on Patriot's bad faith claims. The record reflects that the trial court considered the parties' cross-motions for summary judgment and ruled on the motions the same day. Thus, we may consider the Shelkey affidavit, and any other evidence

13

accompanying the cross-motions and responses, when evaluating whether the trial court erred in granting summary judgment in First American's favor on Patriot's common law and statutory bad faith claims. *See Gilbert Tex. Constr.*, 327 S.W.3d at 124; *see also DeBord*, 446 S.W.2d at 301.

## C.  Patriot's Common-Law and Statutory Bad Faith Claims under Insurance Code Chapter 541

Patriot alleged that First American violated its common-law duty of good faith and fair dealing (i.e., acted in bad faith) when it "failed to attempt in good faith to effect a prompt, fair, and equitable settlement of the claim at issue," and that First American's "refusal to pay is tantamount to a denial of coverage despite its admission of liability." Patriot also brought claims against First American for violations of Insurance Code Chapter 541. Specifically, Patriot alleged that First American (1) "misrepresented the actual economic value of the insured property as being lower than the proper fair market value of the insured property" in violation of section 541.060(a)(l), (2) knowingly failed to make a good faith attempt at a prompt, fair settlement when liability has been made clear in violation of section 541.060(a)(2) because First American did not refer to the $205,000 offer as a "settlement" and its offer of $205,000 did not equal "the true economic value of the insured property," (3) knowingly failed to promptly provide a reasonable explanation for a denial of its claim in violation of section 541.060(a)(3) by "refusing to agree to a reasonable fair market valuation of the insured property,

14

without proper explanation, which is tantamount to denial of coverage," and (4) knowingly failed to affirm or deny coverage of the claim within a reasonable period of time in violation of section 541.060(a)(4).

To prevail on a common law claim for breach of the duty of good faith and fair dealing, the insured must prove that the insurer had no reasonable basis for the denial or delay in payment of a claim and that the insurer knew or should have known of that fact. *Hudspeth v. Enter. Life Ins. Co.*, 358 S.W.3d 373, 389 (Tex. App.—Houston [1st Dist.] 2011, no pet.). An insurer breaches its common law duty of good faith and fair dealing by denying a claim when the insurer's liability has become reasonably clear. *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998); *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997).

Evidence that merely shows a bona fide dispute about the insurer's liability on the contract, however, does not rise to the level of bad faith. *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 194 (Tex. 1998). The issue of the breach of the duty of good faith and fair dealing "focuses not on whether the claim was valid, but on the reasonableness of the insurer's conduct" in handling the claim. *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993). An objective standard is utilized to determine whether a reasonable insurer under similar circumstances would have delayed or denied payment of the claim. *Aranda v. Ins.*

*Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex. 1988); *Vandeventer v. All Am. Life & Cas. Co.*, 101 S.W.3d 703, 722 (Tex. App.—Fort Worth 2003, no pet.).

An insured may also bring a private action based on unfair settlement practices against its insurer under Chapter 541 of the Insurance Code. *See* TEX. INS. CODE ANN. § 541.151 (West 2009) (providing private cause of action for damages arising from statutory bad faith claims set forth in Chapter 541, Subchapter B).

Section 541.060(a) provides in pertinent part:

> It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary:
>
> (1) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;
>
> (2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of:
>
> > (A) a claim with respect to which the insurer's liability has become reasonably clear;
> >
> > . . .
>
> (3) failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;
>
> (4) failing within a reasonable time to:
>
> > (A) affirm or deny coverage of a claim to a policyholder . . . .

16

TEX. INS. CODE ANN. § 541.060(a)(1)–(4) (West 2009). Section 541.060's "reasonably clear" standard is identical to the common law bad faith standard. *See Aleman v. Zenith Ins. Co.*, 343 S.W.3d 817, 822 (Tex. App.—El Paso 2011, no pet.); *see also Giles*, 950 S.W.2d at 55.

Shelkey is the Vice President and Regional Claims Manager for First American. In his affidavit, Shelkey testified that Patriot submitted a claim under the Policy in February 2012, which was assigned to Shelkey for processing. After investigating the claim by reviewing public records and correspondence between Patriot and the third-party, Shelkey determined that title to the Property had failed. Shelkey requested data from Patriot in April 2012 and an independent appraisal of the Property in order to assess the amount of First American's liability under the Policy. The independent appraisal, which was attached to Shelkey's affidavit, determined that the fair market value of the Property was $205,000 as of June 2012. Shelkey forwarded the appraisal to Patriot who then notified him that Patriot's appraisal had determined that the fair market value of the Property was $1,695,000. After obtaining a copy of Patriot's appraisal, Shelkey forwarded it to First American's appraiser and asked it to determine the reason for the disparity in the appraisal values. In an October 2012 letter attached to Shelkey's affidavit, First American's appraiser summarized its review of Patriot's appraisal and, after providing examples, concluded that the appraisal was not credible and based on

unsupported assumptions. In November 2012, Patriot provided Shelkey with the pertinent information regarding indebtedness that Shelkey had been requesting since April.

Shelkey testified that based on the Policy provisions, First American determined that its liability under the Policy was $205,000, and it attempted twice to tender a check to Patriot in that amount, but Patriot rejected the check on both occasions. The summary judgment evidence also indicates that First American notified Patriot on November 13, 2012, that it had concluded its investigation and determined that title to the Property had failed and that Patriot's claim was covered under the Policy. After discussing Paragraph 8 of the Policy, First American explained that it had determined that it was liable for $205,000, which is the value of the Property, as determined by First American's appraiser. First American also explained why it rejected Patriot's appraisal.

Shelkey testified that Patriot commissioned a second appraisal that determined that the fair market value of the Property was $900,000 as of November 27, 2012, which First American forwarded to its appraiser for review. First American's appraiser summarized its review of Patriot's second appraisal, and after providing examples, concluded that the second appraisal, which suffered from many of the same deficiencies as the first appraisal, was neither credible nor appropriately supported.

Thus, Shelkey's affidavit established that First American reasonably investigated Patriot's claim and determined that title to the Property had failed, and First American attempted to promptly effect what it reasonably considered to be a fair and equitable settlement of the claim based upon First American's understanding of the Policy and its reliance upon an independent appraisal, within a reasonable time after it collected and evaluated the necessary information. Aside from arguing that we cannot consider Shelkey's affidavit for purposes of evaluating the trial court's grant of summary judgment on this issue, Patriot does not otherwise challenge Shelkey's affidavit on appeal.

Patriot's interrogatory answers, which set forth the factual bases for its bad faith claims, indicate that Patriot's bad faith claims are based primarily upon the parties' disagreement over the fair market value of the Property. The interrogatory answers do not challenge the reasonableness of First American's reliance upon the independent appraiser's assessment of the Property's fair market value, or the timeliness of First American's investigation and resolution of the claim in light of the various property appraisals commissioned by both parties, or otherwise raise a question of material fact on Patriot's common-law bad faith claim or its claims pursuant to Chapter 541. At most, Patriot's answers demonstrate that there is a bona fide dispute over the extent of First American's liability under the Policy. *See*

*Castaneda*, 988 S.W.2d at 194 (holding evidence that merely shows bona fide dispute about insurer's liability does not rise to level of bad faith).

Accordingly, we hold that the trial court did not err in granting summary judgment in favor of First American on Patriot's common-law bad faith claim or its statutory bad faith claims under Chapter 541.

## D.    Chapter 542

Patriot also alleged that First American violated Insurance Code Chapter 542 by (1) knowingly misrepresenting to Patriot pertinent facts or policy provisions relating to coverage at issue in violation of section 542.003(b)(l) and (2) failing to adopt and implement reasonable standards for the prompt investigations of claims arising out of the title policy in violation of section 542.003(b)(3). TEX. INS. CODE ANN. § 542.0003(b)(1), (3) (West 2009).

Although section 541.151, entitled "Private Action for Damages Authorized," expressly provides a private cause of action for damages arising from statutory bad faith claims set forth in Chapter 541, Subchapter B, including violations of section 541.060, Chapter 542 does not include a similar provision expressly providing for private causes of action for violations under this chapter. *See Allstate Ins. Co. v. Watson*, 876 S.W.2d 145, 148 & n.6 (Tex. 1994) (holding no private cause of action under earlier version of statute); *see generally Terry v. Safeco Ins. Co. of Am.*, 930 F. Supp. 2d 702, 714 (S.D. Tex. 2013) (holding no

20

private cause of action for violations of section 542.003). Accordingly, we hold that the trial court did not err in granting summary judgment in First American's favor on Patriot's claims that First American violated section 542.003 because there is no private cause of action for such violations.

We overrule Patriot's sole issue on appeal.

## Conclusion

We reverse the trial court's judgment with respect to the breach of contract claim and award of attorney's fees and costs to Patriot, and remand for further proceedings on these issues, and we affirm the trial court's grant of summary judgment in First American's favor on Patriot's bad faith and insurance code violation claims.

Russell Lloyd
Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.